Young Men's Christian Association, Appellant, *v.* Harbeson.

490

Argued April 25, 1962.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Lillian Raycroft,* for appellant.

*Roy Wilkinson, Jr.,* with him *Harry Thatcher,* and *Love and Wilkinson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 21, 1962:

The Young Men's Christian Association, a nonprofit corporation, located in Chester, filed a complaint in equity in the Court of Common Pleas of Centre County, against Thomas C. Harbeson, the defendant, seeking specific performance of an option to purchase certain property, as specified in a lease agreement between the parties.   The defendant resisted performance on the basis that the option clause had not been properly renewed in a succeeding term of the lease; also, that the plaintiff was in default in rent.   The court held that, despite the plaintiff's default in certain respects, its holding over after termination of the lease constituted a renewal of it but that the renewal did not include the right to purchase the property.   The complaint was dismissed and the plaintiff appealed.

The facts follow.   Thomas C. Harbeson is the owner of 225 acres of land in Potter Township, Centre County. On August 10, 1945, he and the Y.M.C.A. of Chester entered into a written lease for a five-year term with

the provision that the lessee had the privilege to renew for two extra five-year terms provided it gave notice to the lessor of such intention 90 days prior to the expiration of the term involved. The lease further stipulated that the Y.M.C.A. had the option to purchase the property for $6500 at the end of the last additional term, upon giving 30-day notice.

The agreement was properly renewed for the term from May 15, 1949 to May 14, 1954 but the lessee failed at the end of that term to renew as prescribed by the lease. Instead, on February 18, 1954, four days subsequent to the last day for serving the 90-day notice of renewal, the lessee wrote the lessor: "We would appreciate it very much if you would advise whether or not you would agree to a renewal of the lease for an additional five year term with the same rights, privileges and conditions and options to purchase as contained in the present lease."

The defendant replied on February 22, 1954: "As I read our lease agreement dated Aug. 10, 1945: The original 5 year period of the lease expired May 15, 1949. The first 5 year renewal expired May 15, 1954. The second and final 5 year renewal period ends May 15, 1959. If the above is the correct interpretation, your lease does not expire or terminate until May 15, 1959. . ."

However, the lessor indicated very clearly in that communication that he was dissatisfied with the announced purchase price: ". . . I must say that with the inflation we have had since this lease went into effect on August 10, 1945, I could not afford to sell the property as it now is for that amount. . . Therefore, in view of the foregoing, to protect all our interests a re-negotiation would seem desirable at some time prior to May 15, 1959. However, for my part I think the matter could ride along as is for another 2 or 3 years and see what the conditions are at that time."

The plaintiff continued to pay rent as theretofore. On January 2, 1957, Harbeson again wrote the Y.M.C.A., repeating his dissatisfaction with the $6500 price and again suggesting a re-negotiation. Then on January 25, 1959, because of non-payment of rent, the defendant repossessed the property and declared the lease term ended. On April 10, 1959, he notified the plaintiff: "The rental of my premises, leased to you, in Potter Township, Centre County, Pa., for the period Nov. 15, 1958 to May 15, 1959 was due Nov. 15, 1958 and I have not been paid to date. And since you have not used these premises for camping the past two years, I have re-entered the premises and declared the lease terms ended, in accordance with section 5, page 3 of our existing lease dated August 10, 1945."

On April 11, 1959, the plaintiff notified Harbeson in writing that it intended to exercise the option to purchase the property for $6500 and certified its willingness and ability to complete the purchase. Three days later it tendered the rentals up to May 15, 1959. This tender was refused.

Was the original lease, together with the option clause, renewed until May 15, 1959, and if so, did the plaintiff breach its terms, thus allowing the defendant to repudiate the option purchase clause?* The chan-

---

* This evaporation of the purchase option clause could not be based on the defendant's lament that $6500 in 1959 did not mean what it meant in 1949. Such a reason would not justify resistance to a demand for specific performance, and in fact, it is not so seriously contended. As stated in *Welsh v. Ford*, 282 Pa. 96, 99: "Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel performance: . . . 'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded—such as fraud, mistake, or illegality': Frey's Est., 223 Pa. 61, 65."

cellor answered this question by saying that the plaintiff's holding over and continuance in possession clearly pointed to a renewal of the lease agreement for an additional period of five years at the end of May 15, 1954, but *without the option clause to purchase.*

The question before this Court resolves itself into the following: Was the lease agreement, including the option clause, renewed for a second five-year term when the plaintiff continued in possession at the end of the May 15, 1954 term? We do not believe so. The plaintiff admits that it failed to give the requisite 90-day notice and it is established law that mere continuance in possession and payment of rent does not of itself constitute a renewal of the lease with all its provisions. (*Murtland v. English,* 214 Pa. 325, 329.)

Thus, at the end of the 1954 term, when the plaintiff failed to properly renew the lease, the defendant could have regarded it ended completely. Or he could have imposed any terms he saw fit to the plaintiff's continuing possession. By remaining on the premises and paying rent after being informed by the defendant that he could no longer sell at $6500 and that this price was to be re-negotiated, the plaintiff impliedly accepted the indicated modification.

It may thus be said and the record amply justifies this conclusion, that the parties entered into a new arrangement, namely, that of continuing the lease agreement for another five-year term but without the option to purchase at the $6500 price. This conclusion is confirmed by the defendant's communications in writing to the plaintiff and plaintiff's continuance in possession, and payment of rent, after knowledge of the defendant's position.

The decision reached by the court below, and affirmed here, works no injustice on the plaintiff since it was its own fault in not renewing the lease 90 days prior to the May 15, 1954 expiration date. If it was

dissatisfied with the new terms imposed by the defendant it could have then and there so notified the defendant.

The facts in the case point to the inevitable conclusion that there came into being a mutually agreed-to modification of the original lease agreement, the modification being the elimination of the option to purchase at $6500. It therefore follows that the plaintiff could not enforce specific performance under the original agreement.

The decree of the court below in refusing specific performance is affirmed, each party to bear own costs.