**H. F. D. NO. 26, INC., Appellant,**

v.

**MIDDLETOWN MERCHANDISE MART, Appellee.**

No. 71–2171.

United States Court of Appeals, Third Circuit.

Argued May 5, 1972.

Decided Sept. 26, 1972.

Judah I. Labovitz, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellant.

Albert H. Friedman, Philadelphia, Pa., for appellee.

Before VAN DUSEN, JAMES ROSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

The determinative question for this landlord-tenant appeal is whether there has been a renewal of a lease. The appellee, Middletown Merchandise Mart (Middletown), conducts a general market in Middletown, a rural community outside of Harrisburg, Pennsylvania. It operates a number of retail departments by itself and leases some space to other retail operators, who are given the exclusive right to sell specified merchandise. By an October 17, 1966 written agreement, Middletown granted to H.F.D. No. 26, Inc. (H.F.D.) an exclusive license to operate a retail sales department in its mart. The agreement, which went into effect on November 1, 1966, was to continue for two years, whereupon H.F.D. would have the option to renew for three further terms of four years each. According to the terms of the agreement, the option had to be exercised "by written notice to defendant at least 60 (sixty) days prior to the expiration of the original term."

In order to exercise its option to renew, H.F.D. should have notified Middletown of its intent to do so no later than August 31, 1968. This it did not do. However, it did send a letter which was intended "as our official notice * * * [that] we are exercising our option [to renew]." [1] The terms of the lease provided that the license would expire on October 31, 1968, but that date passed and the parties continued to operate in the same manner as they had acted under the lease, Middletown continuing to receive and accept the rent due to it. On March 18, 1969, H.F.D. and Middletown supplemented the original license agreement by entering into a letter agreement giving H.F.D. "an additional 600 to 700 sq. ft. adjoining our present department in which to enlarge our yard goods section." The letter provided that, "[t]his agreement in no way will affect the terms and conditions of our present license agreement exclusive of the merchandise categories [i. e. yard goods] listed." Eight months later, on November 11, 1969, both parties entered into a second letter agreement, which provided, *inter alia*, for an increase in H.F.D.'s rental payments to Middletown. This letter stated that it was intended to "revise lease beween H F D No. 26 and Middletown Merchandise Mart, dated 10/17/66 and Fabric Dept. agreement dated March 18, 1969." [2]

---

1. The full text of the letter, dated October 7, 1968 reads as follows:

   "This letter will act as our official notice to you whereby we are exercising our option contained in the lease date October 17, 1966 by and between H.F.D. No. 26, INC. and Middletown Merchandise Mart Inc. a Pennsylvania corporation.

   "Please consider this letter notice to you of our intention to continue operating the Domestic and Piece Goods Department in the above store under the terms and conditions of the above named lease."

2. The letter provides as follows:

   "This letter serves notice to Revise Lease between H.F.D. #26 and Middletown Merchandise Mart, dated 10/17/1966 and Fabric Dept. agreement dated March 18, 1969.

On December 14, 1970, Middletown sent H.F.D. another letter, which requested possession of the leased premises, purportedly "according to the terms of our lease dated October 17, 1966 amended by agreement Nov. 11, 1969." The date by which Middletown wanted possession was not specified.

In view of the controversy surrounding its leasehold rights, H.F.D. on February 24, 1971 filed a complaint requesting the district court to declare the rights and legal relations of the parties under the October 17, 1966 agreement. Specifically, it urged the court to declare that H.F.D. was entitled to remain in possession of its department at Middletown Merchandise Mart until October 31, 1972, and that it would thereupon have the option to renew the agreement for two further terms of four years each. Middletown, in its answer, claimed that H.F.D. had failed to exercise its option to renew in a timely manner so that it had become a year-to-year tenant, whose term expired on October 31, 1971.

On March 26, 1971, one month after the complaint was filed, Middletown sent a letter to H.F.D. advising it to vacate by October 31, 1971. Middletown stated that the October 7, 1968 letter did not constitute a timely exercise of the renewal option, so that Middletown had "the right to terminate at the end of any yearly term by giving you 90 days written notice of our intention to do so. We tender that notice herewith."

On October 26, 1971, both parties entered into a stipulation whereby they "agreed that if they were to proceed to trial, there would be offered no testimony other than appears in the * * * affidavits and that no documents would be offered into evidence other than those attached as exhibits to those affidavits." The district judge held that since there had been no timely renewal of the agreement, it "expired October 31, 1968, which was the termination date of the original lease. Thereafter, plaintiff occupied the property in question as a tenant at will, which tenancy did continue until the time when the defendant herein gave notice of termination." The judge thereby indicated that the tenancy had terminated on October 31, 1971.

After notice of appeal was filed, Middletown commenced a state court action for possession. By order of January 7, 1972 we enjoined Middletown from continuing with the proceeding in that court or in any other court pending disposition of this appeal. The state court action has since been removed to the federal court and has been postponed *pendente lite*.

■ This diversity action requires the application of Pennsylvania substantive law to the facts of our case.[3] When a tenant holds over the landlord has a "choice of remedies." "He [the landlord] might have looked upon the tenant as a trespasser and summarily ejected him, or he might have treated him in holding over as a tenant by sufferance, or he might have regarded the holding over as a continuance under the terms of the lease." City of Pittsburgh v. Charles Zubik & Sons, 404 Pa. 219, 221, 171 A.2d 776, 778 (1961).

H.F.D. admits that it failed to give the requisite 60 day notice and that mere continuance in possession and payment of rent does not of itself constitute a renewal of the lease with all its provisions. Young Men's Christian Association v.

---

(1) H.F.D. #26 will pay 10% on all sales, this will include 2% advertising allowance the base guarantee of $18,000.00 a year will remain and all sales above $18,000.00 will be at 10%. (2) A charge of 1½% will be installed on all sales to cover central cashiering. (3) Rent and Cashiering will be deducted weekly from remittance in lieu of minimum advance rental check.

(4) This will become effective as of Dec. 1, 1969."

3. The license agreement also provides that:
   "[T]his agreement is to be performed in Middletown, Pennsylvania, and shall be governed by the laws of that state." par. 47. Middletown is a Pennsylvania corporation; H.F.D. is a Delaware corporation.

Harbeson, 407 Pa. 489, 180 A.2d 916 (1962), citing Murtland v. English, 214 Pa. 325, 63 A. 882 (1906).

In *Murtland* the lease agreement contained an option to renew conditioned upon three months written notice. The tenant did not give the notice required by the lease nor any notice of his intention to exercise the option to extend the lease for another term of five years. The court stated "[t]here was nothing to indicate that the tenant had any intention of binding himself to stay upon the premises for another full term of five years." Under such circumstances the court held that a mere holding over is not in itself an acceptance of the option upon the part of the lessee for the additional term of five years.

*Murtland* is clearly distinguishable from the case at bar. Middletown by its acts and conduct cannot prevail on the thesis that the lease was not effectively renewed. First, the October 7, 1968 letter to Middletown did express H.F.D.'s intentions in unequivocal language to renew the lease under the terms and conditions of the original lease dated October 17, 1966 and to be bound thereby. Second, the March 18, 1969 letter agreement between the two parties refers to "our present license agreement." Since the original license agreement would have expired by that time if it had not been renewed, the March 18th reference to a *present agreement* is strong evidence that there was indeed a renewal within the contemplation of both parties. The third relevant indicia is the letter agreement of November 11, 1969 which provides for an increased rental.[4] That Letter "serves notice" to "Revise Lease between H.F.D. #26 and Middletown Merchandise Mart dated October 17, 1966." Like the March 18th agreement the letter recognizes that the original lease was still in effect. These agreements clearly establish that Middletown knew or had reason to know that both parties recognized the renewal of the original license agreement. We observe that Middletown made no reference to the now claimed "ineffective" renewal notice of October 8, 1966, for more than two years; this was also one month after the complaint was filed.[5]

We agree with the trial judge that: "a landlord will not be deemed to have acquiesced to the validity of a late notice by merely remaining silent"; and there is "no obligation or duty upon a landlord to affirmatively reject receipt of a late notice of an election to exercise an option." However, these general principles are not applicable here in light of the demonstrable evidence which establishes acknowledgement of the original lease, amendments to the original lease and increased rental accepted over a period of time by the landlord. Middletown cannot support its position that it remained silent. The letter agreements are revealing proof that it spoke *loud and clear*. Once a landlord has exercised his choice of remedies and determined how he plans to treat a holdover tenant, "he may not alter" his position. Emery v. Metzner, 191 Pa.Super. 440,

---

4. During the first two years of the lease, Middletown collected all of the gross receipts from H.F.D.'s department. It then deducted its rent and other charges remitting the balance to the lessee. This practice for the collection of rent continued after the November 1969 letter agreement which provided for an increased rental.

5. Our clerk's docket discloses that on January 13, 1972, Middletown applied for an order requesting that H.F.D. file a bond pending disposition of the appeal in this court. An order was entered directing appellant to file in the district court a bond in the amount of $10,000. Annexed to the motion by appellee was an affidavit which stated "on or about December 17, 1971, appellee entered into a lease for the space occupied by the appellant in its Mart for an annual rental of $19,575 plus $1.00 per square foot for storage space of approximately 556 square feet making a total annual rental of $20,121. The term of said lease is three years." Middletown entered into this new lease approximately ten months after suit was filed and while this appeal was pending. The new lease provided for a rental in excess of that paid by H.F.D.

442, 156 A.2d 627, 631 (1959). Middletown obviously considered the original lease renewed and is accordingly bound by its actions. Consequently, the March 26, 1971 notice by Middletown to treat H.F.D. as a tenant at will was ineffective. Young Men's Christian Association v. Harbeson, supra, Cf. Warner Company v. MacMullen, 381 Pa. 22, 112 A.2d 74, 77, 78 (1955).

The judgment in favor of the defendant will be reversed and the case remanded for entry of judgment in favor of appellant H.F.D. consistent with this opinion.