In the Matter of OPUS ONE, INC., Debtor.

The MAY DEPARTMENT STORE CO., KAUFMANN'S DIVISION, Plaintiff,

v.

OPUS ONE, INC., Defendant.

Bankruptcy No. 82-1539.
Adv. No. 82-1319.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 2, 1983.

Douglas Campbell, Pittsburgh, Pa., for debtor.

Joseph McDonough, Pittsburgh, Pa., for May Dept. Store.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

Presently before the Court is a dispute involving lessee's exercise of its option to renew a lease notwithstanding its failure to comply with the written notice requirement specified therein. The dispute arises from the following. Opus One, Debtor-in-Possession and Lessee herein, is engaged in the business of stereo equipment retail sales. It filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 27, 1982. At that time, and for 15½ years prior thereto, Debtor's sole operation had been located at 400 Smithfield Street, Pittsburgh, Pennsylvania.

In 1978, Opus One as Lessee, and May Company, Kaufmann's Division, hereinafter "Kaufmann's", as Lessor entered into a lease of the aforesaid premises for a term of five years, commencing in May, 1978 and expiring on April 30, 1983. Provision 2 of the lease provided in pertinent part as follows:

> Provided Lessee is not in default hereunder the Lessee shall have the option to renew or extend this Lease under the same terms and conditions as contained in this Lease, except as provided herein, for one (1) additional five (5) year period. Lessee shall exercise this option by giving written notice to Lessor by certified mail at least six (6) months prior to the expiration of the Initial Term.

The lease required Opus One to give written notice of its intent to renew to Kaufmann's by certified mail no later than October 30, 1982. Prior to that date, the adversary proceedings at bar were commenced. On June 17, 1982, Kaufmann's filed a complaint for relief from stay and request for Debtor's assumption or rejection of the executory contract. Therein, Kaufmann's alleged that Opus One's monthly rental payments were in arrears; and sought an order either directing Opus One to assume the

lease and comply with the requirements of § 365(b)(1) of the Bankruptcy Code; or to vacate the premises.

In response thereto, Opus One admitted arrearages under the terms of the lease in the amount of $12,952.76 through June, 1982. Opus One stated its intention to assume the lease and cure defaults; or to provide adequate assurances of payment.

Subsequent hearings on July 21, 1982 and August 3, 1982 led to the entry of an Order of Court dated September 13, 1982, which provided as follows:

1. That Debtor (Opus One) is authorized to assume its lease with the May Department Stores Company, Kaufmann's Division, covering premises at 400 Smithfield Street, Pittsburgh, Pennsylvania.

2. That Debtor be, and it is hereby ordered to make timely payment of all future monthly rents and other charges arising under the terms of the lease on or before the first day of each month.

3. *That Debtor be, and it is hereby ordered to cure the arrearages presently existing in the lease which total $12,-952.76, by making an additional payment of $1,000.00 per month on or before the first day of each month, until the arrearages are cured.*

4. That if the Debtor fails to make the payments referred to in paragraphs 2 and 3 hereof on or before the first day of each month, May Department Stores Company shall give immediate notice to the Debtor and to the Chairman of the Creditors' Committee of the existence of a default by the Debtor...

5. If such default is not cured within fifteen days of receipt of the notice referred to in paragraph 4, May Department Stores Company shall have the right to file a petition with this court seeking immediate possession of the leased premises. (emphasis added)

Clause three of the September 13, 1982 Order required Opus One to pay Kaufmann's $1,000 per month toward arrearages over a period of twelve months. Such payments were designated as "additional" payments; presumably in addition to rent. It appears that both parties contemplated renewal; for by the terms of the Order, monthly rental and arrearage payments were to continue beyond April 30, 1983, the date upon which the initial term expired.

Many months later, in April, 1983, Opus One filed a petition to enforce the automatic stay wherein it alleged that by letter dated March 22, 1983, Kaufmann's had advised Opus One that the lease had expired on April 30, 1983 by virtue of Opus One's failure to comply with the written notice requirement in the lease. Opus One further averred that Kaufmann's was acting in bad faith, for it attempted to renegotiate a new lease on onerous terms. Therein, Opus One petitioned the Court to enjoin Kaufmann's from taking any action to remove it from the leasehold premises.

Shortly thereafter, Kaufmann's filed a motion for relief from stay and order granting landlord possession of leased premises, wherein it reiterated Opus One's failure to give written notice to Lessor by certified mail of its intent to exercise its option to renew six months prior to the expiration of the initial term. Kaufmann's sought the entry of an Order declaring that the lease was to expire on April 30, 1983.

Opus One responded thereto by asserting that Kaufmann's was given equivalent timely notice of Opus One's intention to exercise its option by the terms of the September 13, 1982 Order of Court. Opus One further averred that the relief from stay was filed in bad faith.

On the basis of the testimony offered at the hearing on this matter, the Court enters the following Findings of Fact. Tasso Spanos, President of Opus One since 1962, testified that in March, 1982, he telephoned Bob Wilson of Kaufmann's, at which time he advised Wilson of his intent to exercise the option to renew. The following September, Spanos telephoned Wilson's office upon two separate occasions in order to ascertain the amount of rent due under the renewed lease. On both occasions, Spanos was unable to speak directly with Wilson. How-

ever, Spanos advised Donna Brombaugh, secretary to Wilson, of his intent to renew; and his need for the rental figures under the renewed lease. While on both occasions, Spanos requested that Wilson return his calls, there was no response thereto. In the presence of the Committee for Unsecured Creditors, Spanos again called Wilson on October 15, 1982 and repeated his request for information. At that time, Donna Brombaugh again advised Spanos that the requested information was unavailable.

Based upon the foregoing, the Court is firmly convinced that Kaufmann's had actual knowledge of Opus One's intent to exercise the option to renew prior to the October 30, 1982 deadline specified in the lease. Spanos orally notified Kaufmann's agents in unequivocal language of his intent upon four separate occasions prior to October 30, 1982; although the Lessor attempted to disregard the same.

Edward DeHart, Opus One's consulting manager since February, 1983 testified that during the second week of February, he made several attempts to contact Lee Savio, Senior Vice-President of Finance, Kaufmann's Division, May Department Stores, who oversaw the lease of the premises involved herein. Upon finally reaching Savio in February, DeHart advised him of Opus One's intent to exercise the option to renew. Savio informed DeHart that the option could not be exercised because of Opus One's arrearages and overdue back taxes. Savio was unaware of the Order of Court dated September 13, 1982 pertaining to the payment of arrearages under the lease. At that time, DeHart informed Savio of its contents and furnished him with a copy of the same. Thereafter, at the end of February, DeHart again spoke with Savio, at which time Savio acknowledged that Opus One was current in the payment of arrearages. DeHart testified that the purpose of that conversation was to reaffirm Opus One's intent to renew. Savio advised DeHart that upon discussion of the situation with May Co., he would inform DeHart of their position. During a telephone conversation, one week later, Savio informed DeHart that Opus One could not exercise the

option for it had failed to provide Lessor with written notice.

DeHart further testified that during a meeting in April attended by counsel for Kaufmann's, as well as counsel for the Committee of Unsecured Creditors, DeHart was advised by Kaufmann's that if Opus One would discontinue its pending legal action, the parties could renegotiate a new lease. DeHart testified that per Savio's indications payment of all arrearages was required; and the new rent would be at the current market level. DeHart also testified that the premises were not shown to prospective tenants until April, 1983.

The 1978 lease between the parties provided the following with regard to the rental due in the event of renewal:

If the Lessee shall renew and extend this Lease as aforesaid, the annual rent during the renewal term shall be adjusted annually at the beginning of each year during the renewal term in accordance with the changes in the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the Bureau of Labor Statistics of the U.S. Department of Labor, or a successor or substitute index properly adjusted ("CPI"). Lessee agrees that if the CPI as of April, 1983, and every April thereafter during the renewal term, reflects an increase in the cost of living over and above such cost as reflected in the CPI on April, 1978 ("base index year") and using the annual rental payable under paragraph 3(c) hereof as the "Renewal Term Base Rental", an adjustment of the Renewal Term Base Rental shall be made annually as aforesaid during the renewal term based on the percentage difference. The percentage increase thus determined shall be multiplied by the Renewal Term Base Rental and the aggregate of this sum shall represent the "Increased Renewal Term Base Rental" for that year of the renewal term.

Opus One's rental obligation under the initial term was $14.58 per square foot. Savio testified that in the event of renewal,

the obligation for the first year would increase to $19.84 per square foot.

Savio further testified that at one time, Opus One was surrounded by parking garages in close proximity to delapidated buildings. However, as a result of renovation and the recent completion of Oxford Centre immediately across the street from Opus One's present location, the neighborhood has been transformed into a high-traffic and desirable area. As a result, rental rates for retail space have increased dramatically in the recent past. Savio testified that in May, 1982 Kaufmann's had leased adjoining space to C & J Amusement for $33 per square foot.

Spanos testified that Opus One endured the disruption associated with the construction of Oxford Centre over a period of 2½ years with the hope that upon its completion, the site would become more desirable. Spanos further testified that Opus One had occupied its present premises for 15½ years; and that its continuation in that location is essential to its reorganization efforts.

In its brief in support of its motion to grant landlord possession of the leased premises, Kaufmann's argues that lessee did not legally exercise its option to renew by virtue of its failure to send written notice to lessor. Kaufmann's further argues that the Court-ordered agreement of September, 1982 requiring Opus One's payment of arrearages was not a legally sufficient exercise of the option to renew.

In its brief in support of the petition to enforce the automatic stay, Opus One admits its failure to strictly comply with the written notice of intention to renew. However, Opus One argues that Kaufmann's had equivalent, timely notice of Opus One's intent by virtue of the Order of Court, and the overall course of dealing between the parties.

█ The Court now turns to the relevant case law. It is well-settled that an option expires unless it is timely exercised; *McMillan v. Philadelphia Company,* 159 Pa. 142, 28 A. 220 (1893), and time is always of the essence in an option contract. *New Eastwick Corporation v. Philadelphia Builders,* 430 Pa. 46, 241 A.2d 766 (1968). Moreover, notice of intent to exercise the option must be given in accordance with provisions of the contract. *Borough of Phoenixville v. Walters,* 184 Pa. 615, 39 A. 490 (1898).

The Superior Court of Pennsylvania has recently refused to grant relief to a lessee who failed to timely comply with the written notice of intent to renew provisions in the lease because of its administrative oversight. Therein, the Court states as follows: "even those jurisdictions which recognize equitable exceptions to the rule that 'time is of the essence' have rigorous standards for determining when such exceptions should operate." *Western Savings Fund Society of Philadelphia v. Southeastern Pennsylvania Transportation Authority,* 285 Pa.Super. 187, 427 A.2d 175, 179 (1981).

However, in other circumstances, the lessee who has failed to comply with the written notice provisions as set forth in the contract has been afforded relief. In *H.F.D. No. 26, Inc. v. Middletown Merchandise Mart,* 467 F.2d 253 (3rd Cir.1972), judgment for the lessor was reversed notwithstanding lessee's failure to comply with the written notice provisions of the lease, for both parties clearly contemplated renewal by their conduct.

█ Moreover, the lessor may waive the right to written notice by parol. In *McClelland v. Rush,* 150 Pa. 57, 24 A. 354 (1892), judgment for lessor was reversed, based upon a finding that lessee had given repeated oral notices of intent to renew to the lessor, who had not objected to the form thereof.

In applying federal law to a dispute arising out of a lease with the United States, the Third Circuit has stated as follows:

Where a lease gives the lessee a privilege of renewal which may be exercised by notice to the lessor at or before a specified time it may happen that the notice is tardy and the lessor refuses to honor it. Rather frequently a lessee in this position will ask a court of equity to relieve him of the strict letter of his bargain, arguing on the one hand that

the failure to receive notice on or before the due date did not cause the landlord to change his position, and on the other that loss of the contemplated renewal would work a great and irreparable hardship upon the lessee. It is rather generally considered within the province of equity to consider such claims, and in real hardship cases to allow a renewal despite slight, relatively inconsequential and excusable tardiness. *American Houses Inc. v. Schneider,* 211 F.2d 881, 883 (3rd Cir. 1954).

In the case at bar, Opus One's notice of intent to renew was timely although it varied in form from that specified in the lease. Given Kaufmann's actual knowledge of Opus One's intent to renew, the Court concludes that renewal should be permitted, notwithstanding Opus One's technical noncompliance. Forfeiture in the case at bar would be manifestly unfair, particularly in light of Kaufmann's repeated refusal to supply information necessary for Opus One's exercise of its option. Any other result would allow Kaufmann's to use Opus One's technical noncompliance as a means of extricating itself from a lease which is no longer profitable.

An appropriate order will be entered.