484 A.2d 185

**PRINCETON SPORTSWEAR CORPORATION**

**v.**

**H & M ASSOCIATES, Sidney Becker and Leonard Becker, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1984.

Filed Nov. 9, 1984.

Petition for Allowance of Appeal Granted April 8, 1985.

382

Robert H. Malis, Philadelphia, for appellants.

Lewis Kates, Philadelphia, for appellee.

Before SPAETH, President Judge, and BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order entering judgment in favor of appellee-lessee and against appellants-lessors in the amount of $600,000.00. Because we find that certain clauses in the lease agreement exculpate appellants from liability for damages allegedly sustained by appellee, we reverse the order below.

Pursuant to the terms of a May 2, 1973 lease agreement, appellee, Princeton Sportswear Corp., became a third floor tenant of Building No. 12 of a Philadelphia industrial complex known as the "Hardwick and McGee Complex" (H & M Complex). This complex was owned by appellant H & M Associates, a partnership formed by appellants Leonard and Sidney Becker. The lease was executed by appellee's president, Morton Fischer, and by Leonard Becker on behalf of H & M Associates (then known as Man-Tex Clothes, the predecessor-in-interest to H & M Associates); consisted of a

form lease submitted by appellants and an addendum prepared by appellee's counsel; and provided for a two-year tenancy commencing July 1, 1973 with two options to extend the term exercisable by the lessee.

On March 30, 1978, approximately ten months after appellee had exercised its second option to extend the lease for five years, a fire of unknown origin occurred at the H & M Complex, destroying the power center and thereby depriving appellee of heat, electricity and water.[1] Subsequently, appellants in an April 4, 1978 letter, terminated the lease, as extended, pursuant to its terms but allowed appellee to remain on the premises on a month-to-month basis.[2] Appellee responded on April 5, 1978 by filing a petition for a preliminary injunction and a complaint in equity against appellants (1) seeking to compel appellants to restore electrical service to Building No. 12, (2) alleging appellants' intentional breach of the lease by refusing to repair the demised premises, and (3) demanding compensatory and punitive damages. Two days later, at a conference prior to a hearing on appellee's request for a mandatory injunction, the parties entered into a stipulation whereby appellants agreed to allow appellee to make arrangements with Phila-

---

**1.** Appellee contends that "[n]either the boiler for the central heating system ... nor the electrical substation ... was damaged either by the fire or by the water from the fire hoses." (Brief for Appellee at 7). Instead, appellee alleges that post-fire vandalism was the cause of the damage to the heating and electrical systems. However, appellee's contention is undermined by: (a) the testimony of appellee's secretary-treasurer, Anthony Fischer, who testified that, as a result of the fire and attempts to extinguish it, the power center was substantially flooded and destroyed. (N.T. December 16, 1980 at 120–22); and (b) appellee's sworn Complaint filed in federal district court against its insurer, alleging, *inter alia*, that the March 30, 1978 fire "destroyed and render[ed] useless electrical service to [its building in the H & M Complex], its heating system, its pumping station supplying water for its sprinkler system and for its water service." *Princeton Sportswear Corp. v. Rionione Adriatica D. Sicorta, t/a Adriatic Insurance Co.*, No. 79–389, Complaint, Paragraph 8 (E.D.Pa. filed January 30, 1979).

**2.** Paragraph 12(c) of the lease provides that:
Lessor shall make such election to repair the premises or terminate this lease by giving notice thereof to Lessee at the leased premises within thirty days from the day Lessor received notice that the demised premises had been destroyed or damaged by fire or other casualty.
In their April 4, 1978 letter, appellants terminated the lease immediately; however, they also stated that they would allow appellee to remain on the premises on a month-to-month basis, provided the rent and all arrearages continued to be paid.

delphia Electric Company for restoring electricity to Building No. 12 without prejudice to appellee's right to seek reimbursement from appellants for the expenses incurred. Although temporary electrical service was restored by the end of April, 1978, appellee found that the electrical, heat, security and sprinkler services remained inadequate and, consequently, moved its entire operation to a new location in October, 1978.

Following a final hearing on appellee's complaint, the lower court entered an adjudication on March 14, 1983, finding in appellee's favor in the amount of $600,000.00. Appellants subsequently filed exceptions which were denied. This appeal followed.

■■■ Appellants contend that the exculpatory clauses in Paragraphs 11(a) and (b) of the lease agreement relieve them from all liability to appellee for the damages allegedly suffered by appellee as a result of the fire. Appellee claims that appellants' failure to raise expressly the exculpatory clauses in the court below constitutes a waiver of that issue.[3] We find this claim meritless. The validity and effect of the exculpatory clauses were raised and exhaustively discussed by both parties in their summary judgment motions, trial memoranda, and briefs in support of and in opposition to appellants' exceptions to the lower court's findings of fact, conclusions of law, and adjudication. Accordingly, we hold that appellants have not waived their right to assert the exculpatory clause defense.

■■■ Having determined that appellants have not waived the exculpatory clause issue, we now turn to a consideration of the validity of the clause.

Generally speaking, an exculpatory clause is valid if: (a) "it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State" ...; (b)

3. Appellee also claims that appellants' failure to raise the exculpatory clauses as an affirmative defense under the heading of "New Matter" in their answer constitutes a waiver of that defense under Pa.R.Civ.P. 1030. Because appellee did not raise this claim prior to the filing of its appellate brief, we find it waived. *See* Pa.R.A.P. 302(a); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

"the contract is between persons relating entirely to their own private affairs" ...; (c) "each party is a free bargaining agent" and the clause is not in effect "a mere contract of adhesion whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely."
. . .

*Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Association,* 423 Pa. 288, 291–92, 224 A.2d 620, 622–23 (1966) (citations omitted). Additionally, a generally valid exculpatory clause must meet the following standards before it will be interpreted so as to relieve a person of a liability that the law would otherwise impose:

(1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law ...; (2) such contracts "must spell out the intention of the parties with the greatest of particularity" ... and show the intent to release from liability "beyond doubt by express stipulation" and "[n]o inference from words of general import can establish it" ...; (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability ...; (4) the burden to establish immunity is upon the party who asserts such immunity....

*Id.,* 423 Pa. at 292–93, 224 A.2d at 623 (citations omitted). This Court applied those standards in *Richard's 5 & 10, Inc. v. Brooks Harvey Realty Investors,* 264 Pa.Superior Ct. 384, 399 A.2d 1103 (1979), to find that a commercial lease which provided that "Landlord ... shall not be liable for damages ... sustained by Tenant ... including ... claims for damages resulting from ... water ... coming through the roof ..." was ambiguous in regard to whether the landlord was liable to the tenant for water damage allegedly caused by a failure to repair the roof because it did not state that the landlord was exonerated from liability for breach of its duties specifically set forth in the lease (including the duty to keep the roof in proper repair). Therefore, we held that such an exculpatory clause did not immunize

the landlord from liability for water damage unless it was shown on remand that the parties intended the clause to have that effect.

■ In the instant case, the exculpatory clauses in question provide the following:

11(a) Lessee agrees to be responsible for and to relieve and hereby *relieves the Lessor from all liability by reason of any injury or damage to any person or property in the demised premises,* whether belonging to the Lessee or any other person, *caused by any fire,* breakage or leakage in any part or portion of the demised premises, *or any part or portion of the building of which the demised premises is a part,* or from water, rain or snow that may leak into, issue or flow from any part of the said premises, or of the building of which the demised premises is a part, or from the drains, pipes, or plumbing work of the same, or from any place or quarter, whether such breakage, leakage, injury or damage be caused by or result from the negligence of Lessor or his servants or agents or any person or persons whatsoever.

11(b) *Lessee* also agrees to be responsible for and to relieve and *hereby relieves Lessor from all liability by* reason of any damage or injury to any person or thing which may arise from or be due to the use, misuse or abuse of any or any of the elevators, hatches, openings, stairways, hallways of any kind whatsoever, which may exist or hereafter be erected or constructed on the said premises, *or from any kind of injury which may arise from any other cause whatsoever on the said premises or the building of which the demised premises is a part,* whether such damage, injury, use, misuse, or abuse be cause by or result from the negligence of Lessor, his servants or agents or any other person or persons whatsoever.

(Emphasis added). Paragraph 11(a) was modified by a typewritten addendum prepared by appellee's counsel, as follows:

Notwithstanding the provisions of paragraph 11(a) of the lease agreement the negligence of the lessor, his servants or agents shall be excepted therefrom.

Therefore, appellants assert that they are relieved of all liability under the exculpatory clauses, as modified, absent any allegation of negligence on their part. In applying the standards outlined above, we find that the clauses are generally valid because a commercial lease is involved and there was no disparity in bargaining power between the parties. The exculpatory clauses had been reviewed, negotiated and modified by both parties and their counsel. Moreover, we find that the clauses, as modified, evidence a clear and unambiguous intent to release appellants from liability for damages caused by fire where such fire was not the result of any negligence on appellants' part. Accordingly, we hold that the exculpatory clauses in the instant lease are enforceable.

■ Finally, we must consider the effect of the exculpatory clauses in question. Under the plain unambiguous language of the clauses, it is clear that appellants are not liable to appellee for any property damage caused by the fire in "any part or portion of the building of which the demised premises is a part", unless such fire was caused by negligence on appellants' part. Here, there can be no question that the damaged power center of the H & M Complex constituted a "part or portion of the building of which the demised premises [was] a part". Moreover, the lower court specifically found that appellants' conduct was not tortious. Therefore, because we can find no reason either to invalidate or give less than complete effect to the exculpatory language of paragraphs 11(a) and (b), we hold that appellants are not liable for the damages appellees allegedly suffered as a result of the fire. Accordingly, we must reverse the lower court's order.[4]

4. Because of our disposition of this case, we need not address appellants' other contentions.

Subsequent to the filing of its appellate Brief, appellee filed a Petition for Leave to Submit Certain Facts pursuant to Pa.R.A.P. 2501. Essentially, this Petition seeks to disqualify appellants' appellate counsel (different from trial counsel) and

Reversed.

Jurisdiction is not retained.

to quash appellants' Briefs on the grounds that: (1) a conflict of interest allegedly exists between appellants' counsel and appellee's major creditors (appellee ceased its operations and sought to liquidate its assets by the end of August, 1983); and (2) because of this conflict, appellants' counsel became aware and took advantage of confidential facts which it otherwise would not have been privy to. However, because our disposition of the instant case centers on our construction of the lease agreement—specifically, on our interpretation of the exculpatory clauses—our decision is unaffected by the allegations in appellee's Petition. We also note, parenthetically, that appellee does not specify the confidential facts or information which appellants' counsel allegedly acquired as a result of the conflict of interest. Accordingly, we deny appellee's Petition.