In re COOK UNITED, INC., Cook-Car, Inc. and Washington Distributors, Inc., Debtors and Debtors-In-Possession.

Herbert GLIMCHER, Plaintiff,

v.

WASHINGTON DISTRIBUTORS, INC., Defendant.

Bankruptcy Nos. B84–02537 to B84–02539. Adv. No. B85–0250.

United States Bankruptcy Court, N.D. Ohio, E.D.

Sept. 25, 1985.

Gary D. Greenwald, Schottenstein, Zox & Dunn, Columbus, Ohio, for plaintiff.

Allan A. Pines, Burns, Summit, Rovins & Feldesman, New York City, for defendant-debtor-in-possession.

MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on the amended applications of Chillicothe Plaza, Inc. ("Chillicothe") and Cambridge Shopping Plaza, Inc. ("Cambridge") for an order requiring debtor to assume or reject the Chillicothe and Cambridge leases within a specified period of time, the complaint of Herbert Glimcher ("Glimcher") against Washington Distributors, Inc. ("Debtor"), amended answer of Debtor, reply of Glimcher, stipulation of facts (Exs. 1 and 2) and briefs of counsel.

The leases in question are two shopping center leases, one in Chillicothe, Ohio, and the other in Cambridge, Ohio. Debtor is the primary tenant at both locations. The leases were originally entered into in 1964, by Glimcher and Davidson Bros., Inc. ("Davidson"), for a term of 20 years ending August 31, 1985. Davidson subleased the properties to Debtor.

Article XXIV of each prime lease provided for an option to renew upon the following terms and conditions:

Lessee shall have the option to extend the term of this Lease for a period of three (3) years, followed by a second additional period of two (2) years and by a third additional period of five (5) years on the same covenants, terms and conditions as contained herein, except that the fixed annual rent shall be at the rate of $82,500 during the first and second option periods, and at the rate of $63,750 during the third option period. Such options shall be exercised by notice in writing to the Lessor at least six (6) months prior to the expiration of the term, or the extended term, as the case may be.

Paragraph 9 of each sublease provided for an option to renew upon the following terms:

So long as it is not in default, Tenant shall have the right to extend the term of this sublease and to cause the extension of the term of the underlying lease, at the times and for the periods set forth in the underlying lease ...

Davidson subsequently assigned its interests in the two leases to Glimcher, doing business as Cambridge Shopping Plaza, Inc. and Chillicothe Plaza, Inc.

Rentals to be paid under the leases were base rents of $8,333.00 per month, totaling $100,000.00 per year, plus two percent of gross sales in excess of $4,125,000.00 per lease year due and payable by October 30th of each year.

On October 1, 1984, Debtor filed its Chapter 11 proceeding in this Court.

It is undisputed that the percentage rentals due for the lease year ending August 31, 1984 amounted to $63,251.98 for the Cambridge premises and $8,484.21 for the Chillicothe premises. Those amounts were due and payable on or before October 30, 1984, but have not been paid to date. Debtor has continued to pay the monthly rental for the Cambridge premises, but has only paid monthly rental on the Chillicothe premises through March, 1985, and has withheld rentals due since April 1, 1985 because of a dispute over repairs to the premises.

On January 2, 1985, Glimcher filed applications for Debtor to assume or reject the leases within a specified time. By agreement of counsel, at the request of Debtor, the hearing was adjourned for 60 days to allow Debtor more time to make a decision whether to assume or reject the leases.

On February 12 and March 13, 1985, Debtor, without having assumed the leases, sent letters to Glimcher advising that it was exercising its options to renew the Cambridge and Chillicothe leases, respectively, for three-year terms. The letters reserved to Debtor the right to assume or reject the leases at a later date. (See Exs. K and L attached to stipulation of facts.)

On March 20, 1985, Debtor made a demand on Glimcher to repair the roof, heating, ventilating and air-conditioning system ("HVAC") at the Chillicothe premises at a cost of $255,000.00. Glimcher refused to make the repairs, whereupon Debtor, as of April 1, 1985, began withholding monthly rental payments. On June 27, 1985, Debt-

or entered into contracts for the replacement of the HVAC at a cost of $114,568.00. To date, Debtor has paid $88,153.45 of the cost of repairs.

Article VII of each prime lease provided that the lessor was responsible for replacement of the HVAC system. Article XV of each lease provided:

In the event the Lessor ... refuses or neglects to do any of the things specified to be done by the Lessor under the terms hereof, then the Lessee may, but is not obligated to, make such payment or do or cause to be done such things at the Lessor's expense. All money advanced or expended by the Lessee in connection with the aforesaid matters shall be charged against the rents accruing under this Lease and shall in every respect have the same effect as though the amount thereof had been paid as rent to the Lessor. Any unearned portion of the moneys so advanced or expended shall draw interest at the rate of six (6%) per cent per annum until the Lessee shall be fully reimbursed by application of rent as aforesaid.

The question before the Court is whether the Debtor, while in default of the payment of rents, may exercise its options to renew the leases without first assuming them.

Both parties have relied heavily on the cases *In re Opus One, Inc.*, 33 B.R. 190 (Bankr.W.D.Pa.1983) and *In re Webster Clothes, Inc.*, 36 B.R. 260 (Bankr.D.Md. 1984). Neither case is dispositive of the issue before the Court.

*Opus One* involved a situation where the lessor sought to end the lease on the grounds that an option to renew had not been properly exercised. 33 B.R. at 193. The lessor claimed the debtor did not give written notice of its intention to renew, as required by the lease. *Id.* The *Opus One* court held that the debtor's exercise of an option to extend the term of a lease was effective despite the debtor's failure to give the required six-month notice by certified mail. The court ruled on the lessor's actual knowledge of the debtor's intention to extend and on a finding that the noncompliance was only technical to hold that the option had been exercised. 33 B.R. at 194.

The *Opus One* lease permitted, as do the leases before this Court, the exercise of the option only if the lessee was not in default. Acting on the lessor's application that the court require the debtor to either assume or reject the lease, the debtor assumed the lease a month and a half before the deadline for exercising the option. The lease assumption order provided for payment of the $12,952.76 rent arrearage at the rate of $1,000.00 per month over a time extending well into the option period. Implicit in the court's holding the option had been effectively exercised is a finding that the order for periodic payment of the arrearage satisfied the requirement that the lessee not be in default when the option was exercised.

*Webster Clothes* involved almost the opposite situation. There the debtor timely and properly notified the lessor of its intention to renew the lease. The lessor refused to accept the renewal, because the debtor had not assumed the lease. 36 B.R. at 262. The court held that the attempted renewal was effective; that the lease, therefore, did not expire by its own terms and could be assumed. *Id.* at 264. The key, however, was that the lessor never requested the court to order the debtor to assume the lease. Here Glimcher did request this Court to order Debtor to assume or reject the leases some two months before the renewal was due.

In the case before the Court, Debtor was in default of both leases for percentage rents totaling $71,736.19, when it attempted to exercise the options to renew the leases and reserve unto itself the right to assume or reject the leases at a later date.

Paragraph 9 of the subleases granted Debtor the option to renew the leases "so long as it is not in default." At the time Debtor attempted to exercise the options, it was in default for failure to pay the percentage rent of $71,736.19 when it became due on October 31, 1984. Between the time Debtor filed its Chapter 11, on October 1, 1984, and February 28, 1985, the last

day for exercising the option to renew, Debtor could have filed a motion to assume the leases and cured the defaults. Debtor did nothing, even though on January 2, 1985, Glimcher filed applications to compel Debtor to assume or reject the leases. In his applications, Glimcher clearly stated that the leases had to be assumed prior to the exercise of the option to renew.

■ Debtor is requesting this Court to rewrite the leases and Section 365 of the Bankruptcy Code, by holding that even though it was in default, Debtor had a right to exercise its option to renew the leases prior to its assuming said leases and curing the defaults. This Court cannot do so. The bankruptcy court has no authority to modify or nullify contractual provisions. (*See In the Matter of Schokbeton Industries, Inc.*, 466 F.2d 171 (5th Cir.1972).)

■ It is well settled that where a lease has not been terminated as of the date of the debtor's filing its petition, it may be assumed by the debtor. *Executive Square Office Bldg. v. O'Connor*, 19 B.R. 143, 146 (Bankr.N.D.Fla.1981). The right to cure any defaults that may have given rise to a right to terminate the lease arises under 11 U.S.C. Section 365, and operates even though a grace period to cure defaults under the lease has expired. *Id.* The reason for this rule is that the federal policy to allow the debtor time to decide whether or not it will promptly cure a default outweighs state law contract provisions to the contrary. *See Id.* and *Webster, supra*, at 264. However, this right is limited by the lessor's right to an order compelling the debtor to assume or reject the lease. 11 U.S.C. § 365(d) (1978). Once the lessor exercises his right to demand assumption, the debtor is no longer free to cure defaults at will until confirmation of the plan.

Allowing the debtor time to assume or reject violates terms of the leases. Generally, courts will not let a debtor out of bargained for contractual obligations. *In re Advent Corporation*, 24 B.R. 612, 614 (Bankr. 1st Cir.1982); *In re Nashville White Truck, Inc.*, 5 B.R. 112, 116 (Bankr. M.D.Tenn.1980).

■ Once a request is made by the lessor to assume or reject, federal policy no longer overrides the contract, and the lease terms retain their original effect. Thus once Glimcher filed for an order to assume or reject, Debtor had to assume and cure all defaults before it could exercise the option to renew. This is especially so where the lease provision in question is an option to renew. Such provisions are designed to provide the lessor with enough time to find a new tenant if the lease is not renewed. To allow Debtor to exercise the option without assuming the lease would be a substantial interference with the contractual rights of the lessor, because he would not know if the lessee intended to remain, the very thing for which he bargained. Where the lessor has requested assumption or rejection, Debtor must assume before it may exercise an option to renew. In order for Debtor to reap the benefits of a contract, it must at the same time bear the burdens of that contract. *In re Tirenational Corporation*, 47 B.R. 647 (Bankr.N.D.W.D. Ohio 1985).

Debtor has counterclaimed for the amount it has expended for repairs to the Chillicothe premises. At the outset, the Court notes that the issue of whether the repairs were necessary is not before it. The issue before the Court is whether or not Debtor was entitled to withhold rents to cover the anticipated costs of repairs.

■ Article XV of each prime lease, which is incorporated in the subleases, provides, in part:

All money *advanced or expended* by the Lessee in connection with the aforesaid matters shall be charged against the rents accruing under this Lease and shall in every respect have the same effect as though the amount thereof had been paid as rent to the Lessor. Any unearned portion of the moneys so advanced or expended shall draw interest at the rate of six (6%) per cent per annum until the Lessee shall be fully reimbursed by application of rent as aforesaid.

(emphasis added) Under the lease, Debtor was entitled to set off only those amounts it actually expended. Debtor began withholding rent for the Chillicothe premises on April 1, 1985. It did not enter into any contract for the repairs until June 27, 1985. Thus it had not advanced or expended any money until that date, and, in fact, did not make a partial payment for the repairs until July, 1985. Therefore, the rents withheld from April through June, 1985 are in default.

The question of whether Debtor is entitled to reimbursement for the contracted repairs involves factual issues that are not presently before the Court. Therefore, a decision on Debtor's counterclaim is reserved for a later date.

### JUDGMENT

At Cleveland, in said District, this 25th day of September, 1985.

The Court having rendered a memorandum of opinion,

It is ORDERED, ADJUDGED and DECREED that the option to renew the leases on the Cambridge Shopping Plaza, Inc. and Chillicothe Plaza, Inc. premises could not properly be exercised without Debtor first assuming and curing the defaults; that in failing to assume and cure the defaults by February 28, 1985, Debtor's purported attempts to exercise the options are null and void.

It is further ORDERED, ADJUDGED and DECREED that the leases, by their own terms, expired on August 31, 1985.

It is further ORDERED, ADJUDGED and DECREED that the stay under Title 11 U.S.C., Section 362 is lifted as to the Cambridge Shopping Plaza, Inc. and Chillicothe Plaza, Inc. premises.