517 A.2d 963

**PRINCETON SPORTSWEAR CORPORATION**

v.

**H & M ASSOCIATES, Sidney Becker and Leonard Becker, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1984.

Filed Sept. 29, 1986.

Reargument Denied Dec. 8, 1986.

Robert H. Malis, Philadelphia, for appellants.

Lewis Kates, Philadelphia, for appellee.

Before SPAETH, President Judge *, and BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This case is before us on remand from our Supreme Court for consideration of appellant-lessors' remaining contentions. In our earlier decision, we held that an exculpatory clause in the parties' lease agreement was valid and enforceable and, accordingly, reversed the trial court's order

---

\* President Judge Spaeth did not participate in this decision as it was reached following his retirement.

entering judgment in favor of appellee-lessee and against appellants in the amount of $600,000.00. 335 Pa.Superior Ct. 381, 484 A.2d 185 (1984). In a plurality opinion, our Supreme Court reversed. 510 Pa. 189, 507 A.2d 339 (1985).

In the opinion announcing the judgment of the court, Justice Larsen, joined by Justices Flaherty and Zappala, agreed that the exculpatory clause was valid and enforceable, but found that we had disregarded the trial court's findings that appellants' conduct negligently caused appellee's injury, findings making the clause inapplicable pursuant to an addendum to the lease. Chief Justice Nix, in a concurring opinion joined by Justice McDermott, found the exculpatory clause, which provided for a release from liability for damages or injury caused by fire, inapplicable on the basis that the fire was not the cause of appellee's injury, but rather appellants' refusal to respond after the fire. Justice Hutchinson, also concurring and joined by Justice Papadakos, found the exculpatory clause inapplicable on the ground that it referred only to the demised premises in which the fire did not occur. All the justices agreed, however, that we should consider the remaining contentions advanced by appellants.

The relevant procedural history and facts have already been set forth by both our Supreme Court and this Court, and we will not restate them here. *See* 510 Pa. at 190, 507 A.2d at 340 (opinion announcing the judgment of the court); 335 Pa.Superior Ct. at 383–85, 484 A.2d at 186–87. We will proceed, then, to address those of appellants' remaining contentions that are properly before us. For the following reasons, we affirm in part and reverse in part the trial court's order and remand this case for further proceedings consistent with this memorandum.

Appellants first contend that they are not proper parties to this action as agents of the lessor, Man-Tex Clothes, because they affirmatively disclosed its status as lessor to appellee. The trial court had "conclude[d] that under a theory of undisclosed agency [appellants] should be the parties held in the event that liability is established." Low-

er Court Opinion at 6. We find it unnecessary to consider the court's rationale in so ruling because we believe that the court's result is correct on another ground. *See Green v. Juneja,* 337 Pa.Superior Ct. 460, 464 n. 5, 487 A.2d 36, 39 n. 5 (1985) (a reviewing court may affirm a decision of the trial court if the result is correct on any ground).

■ Appellee alleged in its complaint that appellants "were successors in interest to and assignees of any entity known as Man-Tex Clothes." Appellee's Complaint in Equity ¶ 4. Appellants contend that there is no evidence in the record of this fact. Brief for Appellants at 10–11; Supplemental Brief for Appellants at 11. We need only look to the lease itself, however, for such evidence. The December 20, 1977 rider to the lease states that it is "by and between *H & M Associates (formerly Man-Tex Clothes), Lessor* and [appellee]." (Emphasis added). This contention is, therefore, meritless.[1]

■ Appellants next contend that, as a result of the damage to the complex caused by the March 30, 1978 fire, they had the option under paragraph 12(c) of the lease to terminate it or repair the premises.[2] This claim is without merit. By its terms, paragraph 12 applies to destruction or damage of the *demised premises.* As Justice Hutchinson noted in his concurring opinion in this case, "[t]he lease seems to define the demised premises as 'third floor in

1. We note, also, that our Supreme Court and this Court, in our previous decision, implicitly rejected this contention. 510 Pa. at 190, 507 A.2d at 340 (opinion announcing the judgment of the court) (stating that the complex was owned by appellant H & M Associates, a partnership formed by appellants Leonard and Sidney Becker); 335 Pa.Superior Ct. at 383, 484 A.2d at 186 (same; also referring to Man-Tex Clothes as the predecessor-in-interest to appellant H & M Associates).

2. Appellants have abandoned this contention in their supplemental brief and now allege that paragraph 12(d) of the lease precludes appellee from recovery of damages resulting from an interruption of its business activities. Supplemental Brief for Appellants at 15–17. We decline to consider this new contention; in our June 3, 1986 order granting appellants the right to file a reply to appellee's supplemental brief, we did not grant appellants leave to raise additional questions on appeal. For the sake of completeness, we will address the contention originally raised.

building No. 12, as outlined in the attached plan.'" 510 Pa. at 200, 507 A.2d at 344 (HUTCHINSON, J., concurring). After carefully reviewing the lease, we agree and, thus, because the fire did not occur in building No. 12, find that paragraph 12 is inapplicable to the instant case.

Appellants next contend that the trial court's award of damages was erroneous as a matter of law, unsupported by credible evidence, and precluded by the terms of the lease. Specifically, appellants argue that appellee failed to prove the following elements of the award with reasonable certainty: (a) additional rent, (b) relocation expenses, and (c) lost profits.[3] We find the award proper except to the extent that it includes $420,000.00 in damages for lost profits.

■ Appellants first argue that the trial court's award of damages for additional rent ($127,470.60) and relocation expenses ($27,816.00) was improper because appellee would have incurred these expenses even if the breach of the lease had not occurred. They argue that appellee's failure to exercise timely its three-year option, which term ran from July 1, 1975 to June 30, 1978, voided the subsequent five-year option and such failure converted appellee's occupancy into a year-to-year tenancy. Appellants then conclude that, even if the fire had never taken place, appellee would have had to depart from the complex on June 20, 1978. Appellee, which had timely exercised the five-year option,[4] contends, on the other hand, that the lease would have terminated on June 30, 1983, the end date of the five-year option.

■ We find appellee's exercise of the five-year option valid. Appellants cite *Young Men's Christian Association*

---

3. Again, appellants have raised new contentions in their supplemental brief that were not included in their original appellate brief. They allege that the damages were unforeseeable and not within the contemplation of the parties at the time that the lease was executed and that the award for interest expenses was improper. We decline to consider these arguments. *See supra* note 2. Furthermore, we note that neither of these additional claims was raised in appellant's brief in support of their exceptions below. *See* Pa.R.A.P. 302(a) (issues not raised in the trial court are waived on appeal).

4. The parties do not dispute that the first option was untimely exercised and the second timely exercised.

*v. Harbeson,* 407 Pa. 489, 180 A.2d 916 (1962), for the proposition that the failure to exercise timely an earlier option terminates all subsequent options dependent upon the lessee's tenancy under the prior option. Appellants read *Harbeson* too broadly. There, the plaintiff-lessee had the option to renew for two additional five-year terms, provided it gave at least ninety-days notice before the expiration of the term in question, and an option to purchase the let property for $6,500 at the end of the last additional term, provided it gave at least thirty days notice.

The lessee timely exercised the first option, but not the second. It later sought and was denied specific performance of the option to purchase. Our Supreme Court affirmed:

> Thus, . . . when the plaintiff failed to properly renew the lease, the defendant could have regarded it ended completely. Or he could have imposed any terms he saw fit to the plaintiff's continuing possession. By remaining on the premises and paying rent after being informed by the defendant that he could no longer sell at $6500 and that this price was to be re-negotiated, the plaintiff impliedly accepted the indicated modification.

*Id.,* 407 Pa. at 493, 180 A.2d at 918. The Court therefore reached "the inevitable conclusion that there came into being a mutually agreed-to modification of the original lease agreement, the modification being the elimination of the option to purchase at $6500." *Id.,* 407 Pa. at 494, 180 A.2d at 919.

Here, there was no modification or elimination of the five-year option contained in the original lease agreement. It is true that appellants informed appellee by letter dated April 30, 1975, that its rent would be increased by $250.00 per month. That increase, however, which brought appellee's rent to $1250.00 per month, was consistent with the terms of the three-year option, which provided for a "minimum annual rental of $15,000.00 [$1,250 X 12]." Indeed, the letter itself contained the following language: *"All* other terms and conditions of the lease will remain the

same." N.T. May 7, 1981 at 12 (emphasis added). Furthermore, the option paragraph (30) gave appellee the right to "exercise *either or both* of the options...." (Emphasis added). Accordingly, we do not find that appellee's untimely exercise of its first option prevented it from exercising the second.

■ Even if, as appellants argue, appellee's untimely exercise of the three-year option meant that the parties were proceeding under paragraph 24 of the lease, which provided for a year-to-year tenancy that could be terminated by either party upon at least sixty days notice before the expiration of the then current term, *see* Brief for Appellants at 30, appellee's exercise of the later option would remain unaffected. First, when appellants terminated the lease on April 4, 1978, they attempted to do so pursuant to paragraph 12(c), not paragraph 24. Second, the option was granted by appellants "[n]otwithstanding anything to the contrary" and provided that appellee could exercise it "by giving ... written notice thereof at least sixty days prior to the expiration of *the term of the lease then in force.*" (Emphasis added). Therefore, appellants' rights under paragraph 24 could not supersede appellee's right to exercise the five-year option; the option would otherwise be worthless.

Accordingly, when appellee was forced to relocate in October, 1978, its lease with appellant was still in effect, and would be in effect, until June 30, 1983. We therefore find that the trial court's award of damages to appellee for additional rent and relocation expenses was proper under these well-established principles of law:

> [A] lease is a contract. With some exceptions not material here, the usual contract measure of damages applies. *Pugh v. Holmes*, 253 Pa.Super. 76, 384 A.2d 1234 (1978), *affirmed* 486 Pa. 272, 405 A.2d 897 (1979). The damages recoverable for breach of contract are those which will, as nearly as possible, put the injured party in the same

position it would have been in had the contract been fully performed. *Maxwell v. Schaefer*, 381 Pa. 13, 112 A.2d 69 (1955). They are measured by the difference between the rental in the breached lease and the rental the lessee would have to pay at current market for equivalent alternate premises during the remaining term of the lease, plus reasonable relocation expenses. . . .

*Princeton Sportswear Corp. v. H & M Associates*, 510 Pa. at 201, 507 A.2d at 345 (1985) (HUTCHINSON, J., concurring).

Appellants also argue that the trial court erred in awarding appellee $420,000.00 in damages for lost profits because there was no evidence upon which the court could base its finding.

■■ Appellee is entitled to recover "demonstrable profits lost because of business interruption resulting from the necessity of relocating." *Id.*, 510 Pa. at 201, 507 A.2d at 345. "It is well settled that lost income or profit is recoverable in an action for the destruction or interruption of an established business, whenever they are not merely speculative or conjectural." *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Superior Ct. 90, 126, 464 A.2d 1243, 1261 (1983). Gross earnings or sales, of course, do not equal net income or lost profits. *See, e.g., Longden v. Conestoga Transportation Co.*, 313 Pa. 561, 564–65, 169 A. 884, 885–86 (1934). Here, the testimony of appellee's certified public accountant (CPA), upon which the trial court based its award of lost profits, allegedly established lost sales,[5] not lost income. *See, e.g.*, N.T. May 4, 1981 at 17, 27, 30. We must, therefore, reverse the trial court order to the extent that it includes $420,000.00 in damages for lost profits.

Appellee argues that "the additional $400,000.00 or more in sales would not have been offset by additional expenses."

5. Moreover, the amount of lost sales testified to by appellee's witness was $400,000.00, not $420,000.0. *See, e.g.*, N.T. May 4, 1981 at 17.

Supplemental Brief for Appellee at 9. Such a claim is clearly erroneous in light of the testimony of appellee's own witness, the CPA, who testified to lost profits of $74,000.00, *see, e.g.,* N.T. May 4, 1981 at 17, 29, 36, testimony regrettably ignored by both parties in their briefs to this Court. Appellants argue that the projected lost sales figure is anomalous when compared with appellee's sales in other years and that, in any event, viewing appellee's profits on a historical basis, its lost profits could be no more than $7,248.32. Brief for Appellants at 30–39; Supplemental Brief for Appellants at 26–31. A plaintiff's prior and subsequent years' profits are admissible to estimate lost profits. *Delahanty v. First Pennsylvania Bank, N.A., supra,* 318 Pa.Superior Ct. at 126–27, 464 A.2d at 1261–62. Appellee's witness, however, testified as to reasons why 1978 would have been a more profitable year for it if the breach of the lease had not occurred. *See, e.g.,* N.T. May 4, 1981 at 29–31, 52–55. Accordingly, because the trial court erred in awarding appellee damages for lost sales and the parties base their widely varying estimates of lost profits on the testimony of appellee's accountant, testimony heard by the court sitting without a jury, we remand this case for the trial court to determine, based on the record before it and the parties' arguments, the amount of appellee's lost sales, additional expenses, and consequent lost profits. *Cf. Steinhauer v. Wilson,* 336 Pa.Superior Ct. 155, 159, 485 A.2d 477, 479 (1984) (this Court corrects a judgment for damages where the only error disclosed by the record is in sustaining a verdict for a larger amount than the plaintiff has proven). The court shall then enter an appropriate order.

For the foregoing reasons, the order of the trial court is reversed to the extent that it awards appellee $420,000.00 in damages for lost profits, and this case is remanded for further proceedings consistent with this memorandum.

Order reversed in part and affirmed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction is relinquished.