AHMED ET AL., APPELLANTS, *v.* SCOTT ET AL., APPELLEES.

[Ahmed v. Scott (1979), 65 Ohio App. 2d 271.]

(No. L-79-066—Decided September 28, 1979.)

*Messrs. Reiser, Jacobs, Zraik & Szyperski, Mr. Wilbur C. Jacobs* and *Mr. Joseph A. David,* for appellants.

*Gallon, Kalniz & Iorio Co., L.P.A.,* and *Mr. Burton A. Kalniz,* for appellee Madeline Scott.

*Messrs. Connelly, Soutar & Jackson, Mr. William M. Connelly* and *Mr. James D. Caruso,* for appellees Innsbrook Investors, Thomas L. Schlachter and Robert C. Verbon.

BROWN, J. Plaintiffs-appellants, Albert Ahmed and Laya Ahmed, appeal from a final judgment of the Court of Common

Pleas of Lucas County dismissing their complaint seeking relief in specific performance under a written lease to enforce their rights as lessees to purchase a business property from defendant-appellee Madeline Scott, the lessor, at 1923 West Alexis Road, Toledo, Ohio, pursuant to a written option to purchase given to plaintiffs as lessees in the lease. The term of the lease was for eight years. Plaintiffs sought additional relief, namely, damages for alleged breach of the lease provisions by defendant Scott.

In 1977, approximately two years after the expiration of the eight-year term of the lease, defendant Madeline Scott sold the leased premises to defendant-appellee Innsbrook Investors, a partnership consisting of defendants-appellees Thomas Schlachter and Robert Verbon. Plaintiffs, in their complaint, also sought relief against defendants Innsbrook Investors, Schlachter and Verbon to compel these three defendants to also join in the conveyance of the leased premises to plaintiffs and to enjoin increase of the rent by the three defendants from $425 to $775 monthly. The final judgment of the Court of Common Pleas, dismissing the complaint in its entirety, included dismissal as to these three defendants.

On the counterclaim filed by defendant Innsbrook Investors against plaintiffs, the trial court awarded judgment in favor of defendant Innsbrook Investors in the sum of $6,650, constituting the rental increase of $350 per month, *i.e.,* an increase from $425 each month to $775 each month, commencing on August 1, 1977, to the date of judgment, April 4, 1979. The plaintiffs, during this interim (August 1, 1977, to April 4, 1979), had paid only $425 monthly, rather than the $775 fixed by the lessor, Innsbrook Investors.

The appeal by plaintiffs is from the final judgment of dismissal of the complaint and also from the judgment for $6,650 on the counterclaim of defendant Innsbrook Investors.

Defendant Madeline Scott, in 1967, owned a rectangular shaped lot at 1923 West Alexis Road, Toledo, Ohio. A second floor had been added to an existing one-story structure on this lot.

A second parcel was purchased by defendant Scott in 1961. It was L-shaped with the base of the "L" situated behind the first parcel described. The stem of the "L" ran along the west side of the first parcel at 1923 West Alexis Road. This latter parcel will be designated as the west parcel.

On April 12, 1967, a lease was executed by Madeline Scott, as lessor, and the plaintiffs, as lessee, for the rental of the first floor of the building located at 1923 West Alexis Road, with the privilege of using the front, rear and east sides of the building for parking. The lease was for a term of eight years and contained, relative to the issues in this legal dispute, the following provisions, *inter alia:*

"TO HAVE AND TO HOLD the same until said Lessee for the full term of eight (8) years beginning on the date that Lessor delivers to Lessees the approval as required by paragraphs 7 and 28 hereof; and terminating on the     day of 19    .***

"***

"2. That said Lessee will pay said Lessor, at 4935 Fairfield Drive, Toledo, Lucas County, Ohio, as rent for said premises, the sum of Thirty-three thousand dollars ($33,000) payable in monthly installments of three hundred twenty-five dollars ($325.00) for the first five years and three hundred seventy-five dollars ($375.00) for the remaining years and each payment to be made on the first day of each month in advance. Lessees to pay first and last months rent at the time the approval above referred to***is given by Lessor as stated.

"***

"7. That said Lessee will not attach, paint or inscribe any signs or structure to or upon the roof or exterior walls of said building, without the written approval of said Lessor, and that, should any signs or structures be erected without such written approval said Lessor may remove the same.

"***

"25.***Should said Lessee, with or without the express or implied consent of said Lessor, continue to hold and occupy said premises after the expiration of the term of this lease, such holding over beyond the term and the acceptance or collection of rent by Lessor, shall operate and be construed as creating a tenancy from month to month and not for any other term whatsoever, but the same may be terminated by said Lessor by giving said Lessee three (3) days written notice thereof, and at any time thereafter said Lessor may re-enter and take possession of the said premises, any rule in law or equity to the contrary notwithstanding.***

"  *  *  *

"28. Before any remodeling is done by the Lessees, it is agreed that Lessor must first approve all plans for such remodeling in writing and also approve in writing the choice of the contractor Lessees intend to employ. Lessees shall have no obligation to pay rent unless and until such written approval is given by Lessor.

"* * *

"31. Lessees shall have the option to renew this lease on the exact terms and conditions for an additional five (5) years but at the monthly rate or rent of Four Hundred Dollars ($400) and provided further that Lessees shall give Lessor written notice of their election to renew this lease no less than ninety (90) days prior to the expiration of the original term hereof.

"32. Lessees shall have the right of first refusal to purchase the real estate upon which the premises leased hereunder is located, and Lessor agrees to give Lessees the right to purchase said real estate on as favorable terms as any other person to whom Lessor intends to sell same, except that Lessor shall have the right to transfer for any reason or sell said premises to a member of her immediate family who shall be bound by all the terms herein."

Plaintiffs did not submit any plans for the remodeling of the leased premises. They testified that they did receive defendant Scott's approval to begin the remodeling work shortly after the lease was executed. On May 8, 1967, plaintiffs paid defendant Scott $650. A receipt was given by her to plaintiffs with the notation that this sum was received as payment for the first and last months' rent.

On April 1, 1972, five years after execution of the lease, plaintiffs began paying the increased rent of $375 each month.

On April 2, 1975, eight years after execution of the lease, defendant Scott orally informed Mr. Ahmed that the lease had expired. Mr. Ahmed testified that subsequently, on April 2, 1975, he mailed a letter of renewal to defendant Scott. Defendant Scott denied that she ever received the notice.

Negotiations for a new lease were then undertaken and continued for a considerable time between attorneys for the plaintiffs and defendant Scott. A new lease was offered to the plaintiffs which did not contain any option for renewal of the lease or for purchase of the property and which increased the rent to $425 per month with a cost of living acceleration

clause. Plaintiffs refused to execute this lease. However, plaintiffs began to pay the increased monthly rental of $425.

On July 26, 1976, defendant Scott sold to Innsbrook Investors, a partnership consisting of Thomas Schlachter and Robert Verbon, the west parcel of land which is adjacent to the leased premises. Before selling the west parcel to Innsbrook Investors, defendant Scott had offered to sell the west parcel and the leased premises to plaintiffs. This offer was declined by plaintiffs.

After defendant Scott exhausted her efforts to sell the leased premises to plaintiffs she offered it to Innsbrook Investors. This leased restaurant property was conveyed by deed to Innsbrook Investors on June 24, 1977.

Plaintiffs were formally notified of the sale of the leased premises by a letter dated June 23, 1977, from Innsbrook Investors. The letter also informed plaintiffs that the monthly rental would be increased to $775, beginning August 1, 1977, and would continue as such until a mutually satisfactory lease could be negotiated. Plaintiffs refused to pay the increased rent and continued to send rental checks in the amount of $425 each month to the new lessor, Innsbrook Investors.

Thereafter, on July 8, 1977, plaintiffs filed the present action against defendants Scott, Innsbrook Investors, Schlachter and Verbon for the claims previously described.

The record supports the findings of fact, separate from conclusions of law, and the final judgment, rendered by the Court of Common Pleas of Lucas County on the basis of such findings.[2] For that reason, the judgment of the Court of Common Pleas is affirmed. The following legal principles are applicable.

[2] The relevant portions of the findings of fact and conclusions of law dispositive of the claimed errors of plaintiffs-appellants are as follows:

"The original lease began to run on May 8, 1967. On April 2, 1975 plaintiff tendered written notice to defendant Madeline Scott of his desire to avail himself of the extension provision and so extend the lease for an additional five years. Regarding plaintiff's desire to extend his lease,

"1. Notice of intent to extend rental for the additional five years did not meet the condition precedent expressly provided for in the original lease, viz, plaintiff did not tender notice no less than 90 days prior to the expiration of the original lease.

"2. A separate and new lease was thus offered to plaintiff on April 17, 1975. This lease was never formally executed.

"3. Lessee did agree to an increase in rent to $425.00 per month.

"4. Lessee has continued to rent the first floor of its above mentioned building on a month to month basis.

It is evident from the undisputed facts in the record that plaintiffs did not exercise their option to renew the lease for an additional five years commencing on either April 1, 1975 (eight years from the month that the lease was executed), or May 8, 1975 (eight years from the date that the $650 payment was made), by giving written notice of their election to renew the lease no later than 90 days prior to expiration of the original term of the lease as required by paragraph 31 of the lease executed on April 12, 1967. The latest the eight-year term of the 1967 lease commenced was May 8, 1967. Therefore, the latest a written notice of renewal could have been given was 90 days prior to May 8, 1975. The record clearly reveals that the written notice was mailed by plaintiffs to the lessor Scott no earlier than April 2, 1975.

If a lease expressly requires notice of the exercise of a renewal option, such notice must be given in order to renew the lease. Holding over is insufficient to exercise the renewal option. *Mansfield Motors, Inc.*, v. *Freer* (1932), 42 Ohio App. 214; *Owen* v. *Barre* (1920), 14 Ohio App. 104. The transmittal of notice by the lessee to the lessor expressing the intention to renew the lease as required by the provisions of the lease is a condition precedent to a renewal of that lease.

The record reveals that the lessees were careless in failing to give written notice of their exercise of an option to renew the lease at least 90 days before the expiration of the term and, therefore, have no right to any aid from equitable principles to support a claim for renewal of the lease. Equity will not relieve a lessee of the consequences of his failure to give written notice of renewal of the lease within the time required by the

---

*"CONCLUSIONS OF LAW*

"A lease cannot be renewed merely by holding over where the lease expressly requires that rent and notice of intent to renew be given no less than 90 days before the expiration of said lease, and such notice was not given in a timely manner.

"Plaintiffs are not entitled to equitable relief from this court due to their own negligence in failing to renew the lease 90 days prior to its expiration.

"An option to purchase contained in the written lease cannot be exercised after the expiration of the written lease by a tenant holding over.

"Defendant Innsbrook Investors is a bona fide purchaser of both parcels and plaintiff does not have any right, title or interest to either the first or second parcels of land.

"It is therefore ordered, adjudged and decreed that plaintiffs Albert and Laya Ahmed do not have any right, title or interest in the two parcels of land which are the subject of this lawsuit, and their motion for a preliminary injunction is hereby denied.* * * *"

provisions of the lease when the failure resulted from the negligence of the lessee unaccompanied by fraud, mistake, accident or surprise and unaffected by the conduct of the lessor. *Standard Brewing Co.* v. *Tomash* (1910), 17 C.C. (N.S.) 93; *Keppler Brothers* v. *Heinrichsdorf* (1904), 5 C.C. (N.S.) 112; 50 American Jurisprudence 2d 75, Landlord and Tenant, Section 1187; Annotation 44 A.L.R. 2d 1359; cf. *Rounds* v. *Owensboro Ferry Co.* (1934), 253 Ky. 301, 69 S.W. 2d 350; *Berkow* v. *Hammer* (1949), 189 Va. 489, 53 S.E. 2d 1.

The plaintiffs have no legal right to assert an option to purchase the real estate during the period they occupy as holdover tenants. A lease and its written option to purchase, contained therein, are independent contracts and, therefore, the option to purchase cannot be exercised during the holdover period. *Andreula* v. *Slovak Gymnastic Union Sokol Assembly No. 223* (1947), 140 N.J. Eq. 171, 53 A. 2d 191; *Wright* v. *Barclay* (1949), 151 Neb. 94, 36 N.W. 2d 645; *Napper* v. *Rice* (1944), 127 W. Va. 157, 32 S.E. 2d 41; *Cox* v. *McGregor* (1951), 330 Mich. 260, 47 N.W. 2d 87.

Even in jurisdictions which hold that the option to purchase is an integral part of the lease and, therefore, exercisable during the holdover tenancy, it is recognized that the situation of the new tenancy may be so different from the original tenancy that the option may not be part of the implied terms of the new holdover tenancy. *Gressitt* v. *Anderson* (1947), 187 Md. 586, 51 A. 2d 159; *Wanous* v. *Balaco* (1952), 412 Ill. 545, 107 N.E. 2d 791.

The record in the case at bar reveals that the parties recognized that the situation of the new holdover tenancy after April 1, 1975, was far different from the original eight-year term. A new lease was offered to plaintiffs after April 1, 1975, which did not contain an option for renewal of the lease or for purchase of the leased premises. For that reason, plaintiffs did receive notice that the terms and conditions of the original lease had been modified. By holding over, plaintiffs impliedly accepted these modifications, including the loss of the option to purchase the leased premises. See *Young Men's Christian Assn.* v. *Harbeson* (1962), 407 Pa. 489, 180 A. 2d 916, where the court held that a lessee's actions, in holding over and paying rent while a new lease was being negotiated— where the lessor indicated that the purchase price contained in

the original option to purchase the real estate would have to be renegotiated—amounted to an implied acceptance by the holdover lessee to a modification of the expired lease so that the lessee, under the new relationship, was a holdover tenant without an option to purchase at the price stated in the original lease. See, also, *Moore* v. *Harter* (1902), 67 Ohio St. 250. Cf. *Gressitt, supra,* where the court held that the new situation was similar to the original lease and that the option to purchase in the original lease carried over to the holdover tenancy by virtue of continued possession by the tenant and the acceptance of rent by the landlord.

Plaintiffs' additional claim, that both the leased premises and the west parcel (the land behind the leased premises) were covered by the option to purchase contained in the original lease, is without merit. Plaintiffs' lease describes only the leased premises where the restaurant was established.

Paragraph 32 of the lease (option to purchase) refers only to the leased premises and not to the west parcel. To conclude that the west parcel was part of the property embraced in the option to purchase would conflict with R. C. 1335.05, which requires that in order to enforce a contract pertaining to real estate that there be an agreement "***or some memorandum or note thereof***in writing and signed by the party to be charged therewith***." The trial court was correct in finding that Innsbrook Investors was a bona fide purchaser of both parcels of real estate involved in this dispute and that plaintiffs were not entitled to legal or equitable relief with regard to such bona fide purchaser. Since the trial court correctly found and determined that plaintiffs did not have an option to renew the lease or to purchase the leased real estate, it was only logical for the trial court to further conclude that defendant Innsbrook Investors was a bona fide purchaser of both parcels. Plaintiffs, by reason thereof, could assert no right, title or interest with reference to either parcel of real estate against Innsbrook Investors. The judgment of the Court of Common Pleas of Lucas County is affirmed.

*Judgment affirmed.*

POTTER, P. J., and WILEY, J., concur.

WILEY, J., of the Sixth Appellate District, retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.