KERN et al., Appellees and Cross–Appellants,

v.

CLEAR CREEK OIL COMPANY et al., Appellants and Cross–Appellees.

[Cite as *Kern v. Clear Creek Oil Co.*, 149 Ohio App.3d 560, 2002-Ohio-5438.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

No. 02 COA 013.

Decided Oct. 7, 2002.

Marco, Marco & Bailey and David A. Layton, for appellees and cross-appellants.

Henderson, Harpster & Vanosdall, L.L.P., and Timothy E. Potts, for appellants and cross-appellees.

WISE, Judge.

{¶ 1} Appellant and cross-appellee Clear Creek Oil Company appeals from the judgment of the Ashland County Court of Common Pleas that granted appellees and cross-appellants Doug and Katy Kern's motion for summary judgment terminating an oil and gas lease and awarding damages in the amount of $2,000. Appellees and cross-appellants appeal from the trial court's denial of their motion for summary judgment relating to a boundary line located between their property and property owned by Vale of Alford Buffalo Ranch, Inc. ("Buffalo Ranch"). The following facts give rise to this appeal.

{¶ 2} Clear Creek Oil is an Ohio corporation involved in the business of oil and gas propagation. On July 1, 1971, Harold and Edna Sponsler granted an oil and gas lease to Oil Realty Developments, Inc. On October 31, 1987, the Sponsler lease was assigned to Clear Creek Oil. Clear Creek Oil operated the well for numerous years; however, when the cost of oil dropped, Clear Creek Oil stopped producing oil and gas from the well. This cessation of production occurred prior to the Kerns' purchasing the property encumbered by the oil and gas lease.

{¶ 3} The oil and gas lease contains the following language, which is at issue in the case sub judice:

{¶ 4} "Where such gas is not sold or used for a period of one year, lessee shall pay or tender as royalty an amount equal to the yearly delay rental as provided by the provisions of this lease, payable annually at the end of each year during which such gas is not sold or used, and while such royalty is so paid or tendered this lease shall be held as producing property under the above paragraph setting forth the primary term hereof.

{¶ 5} "* * *

{¶ 6} "If the estate or either party hereto is assigned—and the privilege of assigning, in whole or in part is expressly allowed—the covenants hereof shall extend to the heirs, executors, successors, or assigns, but no changes in ownership of the land or assignments or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof * * *."

{¶ 7} The Kerns purchased the property on which the oil and gas well is located on January 12, 1999. On March 27, 2001, the Kerns filed a complaint against Clear Creek Oil and Horst Kadersch for Clear Creek Oil's breach of the oil and gas lease. The Kerns amended their complaint on May 9, 2001, substituting the titled owner of the neighboring property, Buffalo Ranch, for Kadersch, and requesting that the trial court enter a declaratory judgment establishing the boundary line between their property and Buffalo Ranch's property. Also, in their first amended complaint, the Kerns sought certain relief pursuant to the oil and gas lease.

{¶ 8} The parties filed motions for summary judgment. On February 5, 2002, the trial court granted the Kerns' motion for summary judgment, in part, finding that pursuant to the terms of the oil and gas lease, the lease and right-of-way should be terminated and the Kerns should be awarded $2,000. The trial court denied the Kerns' motion for summary judgment as it pertained to the issue of the boundary line.

{¶ 9} Clear Creek Oil filed a notice of appeal and the Kerns filed a notice of cross-appeal. The parties set forth the following assignments of error for our consideration:

{¶ 10} "I. The trial court erred when it granted plaintiff's [sic] summary judgment and terminated the oil and gas lease."

Cross–Appeal

{¶ 11} "I. The trial court erred as a matter of law by failing to grant plaintiff's [sic] motion for summary judgment when they presented uncontroverted expert evidence as to the parties' boundary line."

Summary Judgment Standard

{¶ 12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides:

{¶ 13} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed

in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

{¶ 14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 15} It is based upon this standard that we review the issues raised in the appeal and cross-appeal.

I

{¶ 16} Clear Creek Oil maintains, in its sole assignment of error, that the trial court erred when it granted the Kerns' motion for summary judgment as it pertains to the termination of the oil and gas lease and right-of-way. We agree.

{¶ 17} In support of this assignment of error, Clear Creek Oil argues that the Kerns failed to fulfill a condition precedent contained in the oil and gas lease because they did not provide notice that the property had changed ownership as specifically required by the terms of the lease. In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920.

{¶ 18} The general rule is that contracts should be construed so as to give effect to the intention of the parties. Id., citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. Thus, it is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d

244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 509 N.E.2d 411.

{¶ 19} During the course of the judicial examination of a contract, the reviewing court should give the language of the instrument its plain and ordinary meaning unless some other meaning is evidenced within the document. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245, 7 O.O.3d 403, 374 N.E.2d 146. If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Children's Med. Ctr. v. Ward* (1993), 87 Ohio App.3d 504, 508, 622 N.E.2d 692. Only in the event that a term of a contract is determined to be ambiguous will the matter be labeled as a question of fact. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271.

{¶ 20} A contract or its terms will be viewed as ambiguous only in the event that the rights and duties imposed upon the parties thereto are reasonably subject to conflicting interpretations. *Santana v. Auto Owners Ins. Co.* (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308, citing *Hartford Ins. Co. of Southeast v. Occidental Fire & Cas. Co. of N. Carolina* (C.A.7, 1990), 908 F.2d 235. The Ohio Supreme Court has held: "It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. A contract 'does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto.'" *Foster Wheeler Enviresponse, Inc.,* supra, at 361, 678 N.E.2d 519, citing *Ohio Crane Co. v. Hicks* (1924), 110 Ohio St. 168, 143 N.E. 388.

{¶ 21} Clear Creek Oil contends that the oil and gas lease contains a condition precedent that the Kerns failed to satisfy. A condition precedent is a condition that must be performed before the obligations in the contract become effective. *Troha v. Troha* (1995), 105 Ohio App.3d 327, 334, 663 N.E.2d 1319. Essentially, a condition precedent requires "' that an act must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing.'" Id., citing *Fortune v. Fortune* (May 3, 1991), Greene App. No. 90–CA–96, at 4, 1991 WL 70721. Whether a provision of a contract is a condition precedent is a question of the parties' intent. *Troha* at

334, 663 N.E.2d 1319. Intent is ascertained by considering not only the language of a particular provision but also the language of the entire agreement and its subject matter. Id.

{¶ 22} As noted above, the language at issue provides that "no changes in ownership of the land or assignment of royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof." Based upon this language, Clear Creek Oil maintains that without notice that the Kerns purchased the property where the well is located, it had no obligation to pay the yearly delay rental because the Kerns failed to fulfill the condition precedent by providing written notice.

{¶ 23} In support of this argument, Clear Creek Oil cites *Ahmed v. Scott* (1979), 65 Ohio App.2d 271, 19 O.O.3d 273, 418 N.E.2d 406. In *Ahmed,* the tenant of a business property lease failed to provide written notice to the landlord of the tenant's intention to renew the lease. The landlord terminated the lease and the tenant filed suit. The Sixth District Court of Appeals found:

{¶ 24} "The record reveals that the lessees were careless in failing to give written notice of their exercise of an option to renew the lease at least 90 days before the expiration of the term and, therefore, have no right to any aid from equitable principles to support a claim for renewal of the lease. Equity will not relieve a lessee of the consequences of his failure to give written notice of renewal of the lease within the time required by the provisions of the lease when the failure resulted from the negligence of the lessee unaccompanied by fraud, mistake, accident, or surprise and unaffected by the conduct of the lessor." (Citations omitted.) Id. at 276–277, 19 O.O.3d 273, 418 N.E.2d 406.

{¶ 25} The Kerns contend that pursuant to the plain language of the lease, the lease continued as long as oil and gas, or either of them, was produced by Clear Creek Oil and the lease terminated when such gas was not sold or used for a period of one year. The last operation of the well was prior to June 1997 and Clear Creek Oil did not pay any royalties to the Kerns or their predecessors in an effort to maintain the lease. Accordingly, the Kerns maintain that the trial court did not err when it terminated the lease and right-of-way and awarded them $2,000.

{¶ 26} As to the issue of knowledge of the Kerns' purchase of the property on which the well is located, the Kerns contend that Clear Creek Oil had both actual and constructive notice that they purchased the property based upon conversations they had with Clear Creek Oil in 1999, when they purchased the property. The Kerns also discussed the well with Clear Creek Oil in December 2000 and January 2001. Finally, the Kerns refer to proposed stipulations attached to their brief in which they allege that in October and December 2000, their attorney sent

letters to Clear Creek Oil indicating the Kerns owned the property that is encumbered by the oil and gas lease.[1] Thus, the Kerns conclude that Clear Creek Oil was fully aware of their ownership of the property.

{¶ 27}   In construing the language of the lease so as to give effect to the intention of the parties, we conclude that the trial court erred when it terminated the lease and right-of-way and awarded $2,000 to the Kerns.   In doing so, we find that the trial court failed to consider the language of the lease requiring notice to be given to Clear Creek Oil regarding the change in ownership before such change would be binding on Clear Creek Oil.   The record indicates that the Kerns never provided Clear Creek Oil with such written notice.   The fact that Clear Creek Oil may have had verbal notice of the change in ownership does not suffice to comply with the specific terms of the lease.   This written notice was required to make the change in ownership of the land binding on Clear Creek Oil. Thus, having failed to provide such written notice, we conclude that the Kerns were not entitled to termination of the lease and right-of-way or yearly delay rentals.   Accordingly, the trial court erred when it granted summary judgment on behalf of the Kerns, as we conclude that the Kerns failed to give written notice to Clear Creek Oil according to the clear and unambiguous terms of the lease.

{¶ 28}   Clear Creek Oil's sole assignment of error is sustained.

### Cross–Appeal

### II

{¶ 29}   In their cross-appeal, the Kerns contend that they presented uncontroverted evidence as to the parties' proper boundary line and that the trial court erred by failing to grant their motion for summary judgment.   We disagree.

{¶ 30}   In support of their claim as to the proper boundary line between their property and Buffalo Ranch, the Kerns submitted the affidavit of Lowell Bender, a licensed surveyor with the state of Ohio since 1964.   In determining the boundary between the two properties, Bender used the original deed, which set forth the boundary lines for that particular parcel, the location of the river bed at the time the original deed was created, the location of the current stream bed, where the original flow of the river had been previously, where the stream bed was previously, and the flow characteristics of the river.

---

1.   The proposed stipulations attached to the Kerns' brief are not part of the trial court record nor are the two letters drafted by their attorney in October and December 2000.   Therefore, because these documents were not made a part of the trial court record, we will not consider them for purposes of this appeal.

{¶ 31} Bender used thirty-two pins on the western boundary to establish the meandering of the river as it existed at the time the original deed was created in 1865. Pursuant to that deed, the property now owned by the Kerns had an established westernmost property line along the west bank of the Vermillion River. The pins were set, as established in the attached survey, along the west bank of the river pursuant to the boundaries set forth in the original deed.

{¶ 32} In response, Buffalo Ranch relies upon the deeds of the properties in question. The deeds for the Kerns' property describe the boundary line between the properties as "in a Southeast direction along the West bank of the Vermillion River." The deeds for the property of Buffalo Ranch describes the boundary line between the properties as "all that part of land on the West side of the Vermillion River; that is from the present current of the river."

{¶ 33} It is clear from the language of the deeds that the landowners intended the location of the west bank of the Vermillion River to be the boundary line between the properties. Having reached this conclusion, the only remaining issue the trial court had to resolve was whether the boundary line is as it existed at the time the original deed was created in 1865 or whether the boundary line exists where the river happens to be at any given time.

{¶ 34} In denying the Kerns' motion for summary judgment on this issue, the trial court found that the boundary line exists where the river happens to be at any give time. The trial court's conclusion is supported by case law.

{¶ 35} "As a general rule, where a waterline is a boundary of given land, that line remains the boundary no matter how it shifts. * * * Similarly, where the bank of the stream is called for and the bank is added to by slow and gradual accretion, the boundary is the new bank at low water. If, however, a watercourse which has been the boundary line changes its channel suddenly, it ceases to be the boundary, and the boundary remains where the watercourse was." 2 Ohio Jurisprudence 3d (1998) 64–65, Adjoining Landowners, Section 58.

{¶ 36} Further, in the second paragraph of the syllabus of *Jefferis v. E. Omaha Land Co.* (1890), 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872, the United States Supreme Court held:

{¶ 37} "Where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary; and a deed describing the lot by its number conveys the land up to such shifting water line; so that, in the view of accretion, the water line, if named as the boundary, continues to be the boundary, and a deed of the lot carries all the land up to the water line."

{¶ 38} Accordingly, absent any evidence in the record that the Vermillion River suddenly changed its course, we conclude, as did the trial court, that the

west bank of the river is the boundary line between the two properties even though this water line differs from its location in 1865.

{¶ 39}   The Kerns' sole assignment of error, in their cross-appeal, is overruled.

{¶ 40}   For the foregoing reasons, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed in part and reversed in part.

Judgment affirmed in part<br>and reversed in part.

WILLIAM B. HOFFMAN, P.J., and EDWARDS, J., concur.