[Cite as *Checkers Pub, Inc. v. Sofios v. One 49 N., L.L.C.*, 2016-Ohio-6963.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Checkers Pub, Inc.                                    Court of Appeals No. WD-15-054

    Appellant                                         Trial Court No. 2013 CV 0577

v.

Ann Sofios, et al.

    Appellees

v.

One 49 North, LLC                                     **DECISION AND JUDGMENT**

    Appellant                                         Decided:  September 23, 2016

* * * * *

Linde Hurst Webb and Daniel T. Ellis, for appellants.

Catherine G. Hoolahan, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellants, Checkers Pub, Inc. (hereinafter "Checkers") and One 49 North, LLC, (hereinafter "One 49 North") appeal from the April 1, 2015 judgment of the Wood County Court of Common Pleas granting summary judgment to appellees, Ann Sofios,

the Estate of Francine Sofios, and F&A Sofios Properties, Ltd. (hereinafter collectively "the Sofios") and the August 5, 2015 judgment finding there were no remaining claims to be determined. For the reasons which follow, we reverse.

{¶ 2} On appeal, appellants assert the following assignments of error:

APPELLANTS' ASSIGNMENT OF ERROR NO. ONE

THE TRIAL COURT ERRED IN DENYING CHECKERS' MOTION FOR SUMMARY JUDGMENT AND IN DENYING CHECKERS' DEMAND FOR SPECIFIC PERFORMANCE

APPELLANTS' ASSIGNMENT OF ERROR NO. TWO

THE TRIAL COURT ERRED IN HOLDING WRITTEN NOTICE WAS REQUIRED TO TRIGGER THE RENTAL OPTION TERM

APPELLANTS' ASSIGNMENT OF ERROR NO. THREE

THE TRIAL COURT ERRED IN HOLDING CHECKERS WAS A HOLDOVER TENANT

APPELLANTS' ASSIGNMENT OF ERROR NO. FOUR

THE TRIAL COURT ERRED IN HOLDING THAT SOFIOS DID NOT BREACH LEASE AGREEMENTS

{¶ 3} This appeal involves commercial real estate which consists of three separate business units, 147-149-153 North Main Street, Bowling Green, Ohio. Francine Sofios managed the property for F&A Sofios Properties, Ltd. until her death in July 2010.

2.

Afterward, Athena Sofios Marks, a partner of F&A Sofios Properties, assumed management of the leased properties.

{¶ 4} Checkers leased 149 North Main Street (hereinafter the "leased property") under a commercial "Lease" and "Amendment to Lease." Richard Ault is the president of Checkers, an Ohio corporation, and the managing partner of One 49 North, which operates a bar on the leased property.

{¶ 5} In August 2013, the entire property was sold to appellants' competitor, Main Street BG Ventures, LLC (hereinafter "Main Street") by F&A Sofios Properties, Ltd. Ault attested he first learned of the sale of the leased property on September 3, 2013, when he was instructed to send future rent payments for the leased property to Main Street.

{¶ 6} In October 2013, Checkers sued the Sofios and Main Street to enforce Checkers' right of first refusal to purchase the property. Had the proper notice been given, Checkers asserts it would have purchased the property. Checkers sought declaratory relief; damages from Sofios' breach of the lease; specific performance of its right of first refusal because of the unique nature and location of the property and because continued operation of appellants' business renders any remedy at law inadequate; and intentional interference with contractual rights. Main Street and the Sofios asserted counterclaims against Checkers. One 49 North was joined as a third-party defendant. (To simplify this case, we reference appellants jointly as one entity even though only one of the entities was actually involved in the matter discussed.)

3.

{¶ 7} All the parties moved for summary judgment. The lawsuit was primarily resolved on April 1, 2015 with the trial court granting summary judgment to Main Street and the Sofios on the key issues. All of the remaining issues between appellants and Main Street were settled by the parties, and Main Street is not a party to this appeal. The Sofios dismissed the remainder of their counterclaims.

{¶ 8} In granting summary judgment, the trial court held that although the lease and Amendment to Lease did not comply with the requirements of the Statute of Conveyances, R.C. 5301.01, the contracts were enforceable between the parties. The court also resolved other issues involving the validity and enforceability of the lease in favor of appellants. These findings have not been challenged on appeal. Our focus is only on the issues relating to the assigned errors, all of which concern the enforceability of appellants' right of first refusal to purchase the leased premises.

{¶ 9} In its motion for summary judgment, the Sofios argued appellants forfeited their rights under the lease because they had not renewed the rental term in accordance with the lease, which the Sofios argued required 60 days written notice of the intent to exercise the option to renew. It is undisputed that appellants never gave written notice of an intent to exercise any of the options to renew the lease term. Secondly, the Sofios argued appellants had breached the lease by failing to pay the rent that was due during the second rental term. Appellants had tendered rent arrearages two years after the renewal term had begun, but the check was not accepted by Main Street, which owned the

4.

building by that time. Therefore, the Sofios argued appellants held the leased premises on a month-to-month tenancy and the right of first refusal had terminated.

{¶ 10} Appellants asserted that the Sofios breached the lease by selling the property without honoring appellants' right of first refusal. Athena Sofios Marks testified she contacted her accountants for copies of the leases in the spring of 2013 because of negotiations to lease the other units in the building. She testified she never located the lease with appellants or reviewed the right of first refusal provision prior to the sale. She testified she first contacted Ault in April or May 2013, and later in July 2013, to obtain a copy, but he could not produce it. Ault attested Athena Sofios first sought a copy of the lease in July 2013. He testified at his deposition that he and his wife attempted to find the lease, but they could not. He assumed Francine Sofios had the original. Neither party was able to locate the lease nor its amendment until this litigation arose. Athena Sofios Marks testified that she never told Ault she was in the process of or had sold the property.

{¶ 11} Appellants argued they were entitled to have the lease enforced in equity under the remedy of specific performance of the terms of the lease. They argued they were entitled to enforce the lease because they took possession pursuant to a defectively-executed lease, paid rent, and changed their position to their detriment, which constitutes part performance and gives rise to an implied lease under the same terms. Ault attested in his affidavit that Checkers invested over $183,000 by purchasing restaurant equipment to be used in its operation and by remodeling the premises before it began operating as One 49 North. Ault attested to the improvements to the property and appellants' reliance

5.

on the lease provisions. Both Ault and Athena Sofios Marks testified that they had discussed in May 2012 Ault's desire to take over the space in another unit, but that he could not proceed until the litigation with the other tenant was resolved. Therefore, even if the court would find appellants were holdover tenants on a yearly tenancy, appellants argued that they were still entitled to specific performance of the right of first refusal provision.

{¶ 12} In response to the argument that the lease term had expired because appellants failed to give written notice of the intent to elect the second renewal term of the lease, appellants argued they notified the Sofios of their intent to exercise their option to renew until 2022 when they signed the amendment to the lease. Appellants denied any obligation under the lease or Amendment to Lease which required the renewal of the lease to have been in writing for each term. Ault attested he would never have executed the amended lease if he had not had an absolute right and option to renew the lease until 2022. He attested that Francine Sofios and he understood the lease was to last until 2022 and he never exercised any of the term renewals in writing. When the eight years covered by the Amendment to Lease were finished, Ault assumed he would discuss the rental rate with Francine Sofios and knew she would require a fair price. He also assumed that by that time, the litigation with the other tenant would have been resolved and he could purchase the building.

{¶ 13} Furthermore, appellants argued the failure to pay the correct rent was a mistake which appellants attempted to rectify in the same manner it had done in the past.

6.

Ault attested that two months after the beginning of the first renewal term, Francine Sofios notified Ault he had failed to pay the increased rent. Ault immediately paid the arrearage, which was accepted by Francine Sofios. Ault further attested that he was never notified by the Sofios that he was in default for underpaying the rent for the first two years of the second renewal term and that he was not aware that the rent had increased.

**Lease Agreement**

{¶ 14} The original lease agreement, executed by Francine Sofios and Ann Sofios, granted a lease to three individuals to operate a Skyline Chili restaurant for six years at a monthly rent of $1,500, with an increase in the fourth through sixth years to $1,600. The lease contained the following three paragraphs:

ADJUSTMENT OF RENT ON RENEWAL

Effective during Years four through six (4-6) of said term, the monthly rent shall be increased to a sum of One Thousand Six Hundred Dollars ($1,600.00). Option period, two additional periods, at LESSEE'S sole option, of six (6) year terms. Effective on the optional renewal date beginning in year seven (7) of the lease, the monthly rent shall be increased for Years seven through nine (7-9) to a sum of One Thousand Eight Hundred Dollars ($1,800.00). The monthly rent shall be increased for Years ten through twelve (10-12) to a sum of Two Thousand Dollars

($2,000.00).  Terms of remaining options shall be determined upon commencement of said options.

\* \* \*

## OPTION

LESSEE shall have the absolute right and option to renew this lease agreement for a period to total not less than twenty (20) years, provided LESSEE shall give written notice to the LESSOR, a minimum of sixty (60) days prior to the expiration of the current term of the lease. (Hereinafter "Option.")

\* \* \*

## DEFAULT

If the LESSEE at any time shall be in default of payment of rent herein, and if said default is not remedied within thirty (30) days, or if LESSEE is in default on the performance of any of the other covenants, terms and conditions of this Lease and the LESSEE shall fail to remedy such default within thirty (30) days \* \* \* it shall be lawful for LESSOR to enter upon said premises, and retakes [sic], repossess, and enjoy the same as if the lease had not been made, and thereupon, this Lease and everything herein on the part of the LESSOR to be done and performed shall cease and terminate \* \* \*.

## Amendment to Lease

{¶ 15} On October 24, 2006, an "Amendment to Lease" was executed by Francine Sofios and Ann Sofios, assigning the interests of the lessees to Checkers Pub, Inc., Richard K. Ault, President. Ault attested the amendment was drafted by Francine Sofios and that she retained the original document and faxed him a copy. The amendment provided the initial term would begin November 1, 2006, and run for two years at a yearly rental rate of $19,200 with two additional three-year lease options: (1) November 1, 2008, through October 31, 2011, and 2) November 1, 2011, through October 31, 2014. The yearly rental rate would increase to $21,600 per year/$1,800 per month the first renewal period and $24,000 per year/$2,000 per month for the second renewal period.

{¶ 16} The amendment also provided that appellants would have a right of first refusal to purchase the property if the Sofios desired to sell and received a bona fide offer they were willing to accept. The Sofios were obligated to give appellants 30 days written notice of the offer to purchase. The amendment also provided: "The provisions of the lease dated June 1, 2002 not amended herein shall remain in full force and effect."

## Trial Court Decision

{¶ 17} The trial court held that, although the lease was defectively executed, it was still valid and enforceable between the parties. The trial court also found that in August 2013, when the property was sold, appellants were paying $1,800 a month in rent to the Sofios despite the fact that the rent had increased for the second renewal period. On

October 14, 2013, appellants tendered a check to F&A Sofios for $4,800 to cover the shortage for the increased rent claiming appellants were not aware of the increased rental amount for the second renewal term of the amended lease. The check was not accepted by Main Street.

{¶ 18} The court concluded that appellants never exercised, in writing 60 days prior to the second rental term, their option to renew the lease from 2011 through 2014. It was not until nearly two years later that appellants attempted to pay the overdue rent arrearage. Therefore, the trial court held that because appellants had not renewed the lease term, the lease terminated October 31, 2011. The court found appellants became holdover tenants on November 1, 2011, because they continued to occupy the premises and pay rent. Having become holdover tenants, the court further held that appellants no longer had a right of first refusal to purchase the property because that right terminated upon expiration of the lease.

{¶ 19} The court also held that appellants were not entitled to the equitable remedy of specific performance to enforce their right of first refusal under the lease. The court found that equity weighed in favor of the Sofios because 1) appellants did not attempt to exercise their option to renew the lease term until two years after the term would have commenced; 2) the failure to renew the lease was the result of carelessness, not the result of an accident or honest mistake; and 3) while appellants have spent $183,000 to improve the leasehold, their investment was attributable to the renewal options under the lease, not the right of first refusal; 4) the Sofios were denied rental

money due under the lease for two years; and 5) Main Street was a bona fide purchaser for value.

## Appellate Standard of Review

{¶ 20} The case also involved the granting and denial of summary judgment, which requires a de novo standard of review. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245 (1996). However, the summary judgment in this case also involved equitable relief, which is reviewed under an abuse of discretion standard. *Prokos v. Hines*, 4th Dist. Athens Nos. 10CA51, 10CA57, 2014-Ohio-1415, ¶ 140. "Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203, 102 N.E. 737 (1913). Thus, we review the trial court's denial of specific performance for abuse of discretion. *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 473 N.E.2d 798 (1984). An "abuse of discretion" requires that we find "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 21} This case also involves the construction of an instrument of conveyance, which is a question of law, and is reviewed de novo by an appellate court. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684

(1995); *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus.

## Renewal Option and Holdover Tenancy

{¶ 22} We begin by addressing appellants' second and third assignments of error out of order. In their second assignment of error, appellants argue that the trial court erred by holding that the lease agreement required 60 days written notice of appellants' intent to exercise its option to renew for the second renewal term beginning 2011, and by holding that the lease expired on October 31, 2011. In their third assignment of error, appellants argue the trial court erred by finding that appellants had not properly exercised their option to renew the lease term and became holdover tenants after October 31, 2011, which extinguished their option to purchase.

{¶ 23} Courts must give plain language its ordinary meaning and avoid revising a contract. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11; *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 380, 683 N.E.2d 337 (1997); *Alexander* at paragraph two of the syllabus. Furthermore, the "contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage." *Local Mktg. Corp. v. Prudential Ins. Co. of Am.*, 159 Ohio App.3d 410, 2004-Ohio-7001, 824 N.E.2d 122, ¶ 8 (1st Dist.). Parties to a contract are presumed to have conveyed their intent through the language they used in the contract. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. Accordingly, interpretation of a clear and unambiguous contract term is a

12.

matter of law, and a court should not admit extrinsic evidence to establish its meaning. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), syllabus.

{¶ 24} The "Option" provision of the lease provided that appellants could renew the lease agreement for a period not less than 20 years by giving written notice 60 days prior to the expiration of the current term of the lease. The trial court did not make a specific finding that the option to renew provision was unambiguous. Instead, the trial court simply found the option requirement of written intent to renew applied to each rental period.

{¶ 25} Appellants argue the trial court erred by not giving the "Option" section of the lease its plain and ordinary meaning and by adding terms to the lease. Appellants argue the option provision stands alone and relates solely to the option to renew the entire lease for 20 years and does not apply to each six-year (later amended to three-year) rental renewal periods found in other sections of the lease. Furthermore, they argue neither the "Adjustment of Rent on Renewal" provisions of the lease nor the "Terms" section of the Amendment to Lease required written notice to exercise the option to renew. Appellants suggest that the original lease, which covered a span of 18 years with the optional renewal periods, could be renewed up to 20 years by giving notice in writing to the lessor, which it did by executing the Amendment to Lease.

{¶ 26} Upon a review of the lease and Amendment to Lease, we find the language of the option provision is ambiguous.

13.

**{¶ 27}** The option provides appellants could renew the lease for "a period to total not less than twenty (20) years" by giving written notice 60 days "prior to the expiration of the current term of the lease." The phrase "current term of the lease" is undefined. However, the lease also included a section entitled "Terms," which provided: "To have and to hold the same for six (6) years beginning October 1, 2002." Furthermore, the "Adjustment of Rent on Renewal" provision included the following clause: "Option period, two additional periods, at LESSEE'S sole option, of six (6) year terms." This provision would have permitted appellants to renew the lease until 2014, not 2022.

**{¶ 28}** The Amendment to Lease executed in 2006, reduced the term of the lease from six years to two years, with the option to renew the lease for two three-year renewal terms, for a total lease period of up to eight years, or until 2014. Therefore, the option provision does not clearly relate to the adjustment of rent provision of the amended lease.

**{¶ 29}** Appellants contend this section was intended to provide appellants with a 20-year lease and did not relate to the 6-year/3-year renewal terms. However, appellants' argument that the execution of the Amendment to Lease was the "writing" referred to in the option provision of the lease is clearly not what was intended by the parties since it was executed only four years after the lease.

**{¶ 30}** But, even if we assume, arguendo, that the option provision is unambiguous and requires written notice of the intent to renew the lease for each rental period, we find the trial court erred in finding that the lease had not been renewed for the second option period at issue.

14.

{¶ 31} At the end of the first rental period in 2008, and the second rental term in 2011, Ault testified he did not give written notice to Francine Sofios to renew the rental period, but appellants continued to occupy the premises and pay rent based upon the prior rental rate. Ault further testified that when Francine Sofios notified appellants in 2008 of the increase in rent, appellants immediately paid the increased rent and arrears. For the second renewal period, appellants again continued to occupy the leased premises and paid the incorrect rent, which Athena Sofios Marks accepted. Ault also testified that he had made it clear to Francine Sofios at the time of the execution of the original lease and the amendment that his intent was to renew the lease for 20 years, evidenced by the inclusion of the "Option" provision. Ault also testified that he expended funds to improve the leased premises to update and expand the kitchen in reliance on his option to renew the lease for 20 years.

{¶ 32} In its simplest form, this case was a claim by the lessees to enforce their right of first refusal to purchase the leasehold. The lessor asserted the right of first refusal expired when the lessees did not give timely, written notice of their intent to renew the rental term and the lease terminated. However, the lessor never sought forfeiture of the lease for failure to renew the lease pursuant to the alleged terms of the lease nor did the lessor notify the lessees they had defaulted on their lease and that the lease had terminated. Instead, the lessor asserted forfeiture as a defense to the lessees' assertion of a breach of the lease (the first right of refusal provision) by the lessor.

15.

{¶ 33} A lessee may seek to enforce an option to renew a lease despite the failure of the lessee to comply with the requirements of the renewal option based on the equitable doctrine of waiver. Generally, where a lease requires written notice of an intent to exercise the option of renewal of a lease, such notice must be given in order to renew the lease. *Paterakis v. Estate of Tuma*, 66 Ohio App.3d 373, 377, 584 N.E.2d 61 (8th Dist.1990). Merely "holding over is insufficient to exercise the renewal option." *Id.* However, the lessor may waive any failure to exercise the option pursuant to the terms of the lease since the option is for the benefit of the lessor, not the lessee. *Cleveland Fin. Assocs., LLC v. Prim Capital Corp.*, 8th Dist. Cuyahoga No. 92082, 2009-Ohio-2727, ¶ 23; *Joyce/Dayton Corp. v. C.A. Manchester Tank & Equip. Co.*, 2d Dist. Montgomery No. 15977, 1996 Ohio App. LEXIS 5435, *9-10 (Dec. 6, 1996), citing *Baxter Laundries, Inc. v. Lucas*, 43 Ohio App. 518, 522, 183 N.E. 538 (5th Dist.1932). Waiver can occur by a subsequent oral or written agreement or by the acts and conduct of the parties. *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922), paragraph three of the syllabus.

{¶ 34} Alternatively, the lessee may seek to enforce the lease by pursing the equitable remedy of specific performance to enforce the renewal provision. The trial court correctly held that the equitable remedy of specific performance is not available to enforce an option to renew when the lessee was merely negligent in its failure to abide by the requirements of a lease. Ahmed v. Scott, 65 Ohio App.2d 271, 276, 418 N.E.2d 406 (6th Dist.1979). However, equity will lie if the lessee failed to exercise an option in

16.

accordance with the terms of the lease because of "accident, fraud, surprise or honest mistake, and has not prejudiced the lessor" or the "lessee has made valuable improvements to the lease premises" and "there is no prejudice to the landlord." *Molnar v. Castle Bail Bonds, Inc.*, 4th Dist. Ross No. 04CA2808, 2005-Ohio-6643, ¶ 72; *Paterakis v. Estate of Tuma*, 66 Ohio App.3d 373, 377, 584 N.E.2d 61 (8th Dist.1990); *Benton v. Tecumseh Corrugated Box Co.*, 6th Dist. Wood App. No. WD-85-9, 1985 Ohio App. LEXIS 9020, *6-7 (Oct. 25, 1985).

{¶ 35} Without addressing the issue of whether the trial court abused its discretion in weighing the equities for specific performance, we find the trial court erred by failing to find the Sofios are estopped from asserting a failure to renew the lease in writing because the Sofios waived their right of forfeiture by their course of conduct which allowed appellants to exercise the first option to renew without written notice and by allowing appellants to exercise the second option to renew without written notice by retaining possession and paying rent for two years of the second three-year term. Based on the Sofios' course of conduct, we find the lease was valid through 2014, not 2011. *Colaprete v. Morris*, 5th Dist. Stark No. 2013CA00031, 2013-Ohio-3899, ¶ 44 (accepting overdue rent); *Telecom Acquisition Corp. I v. Lucic Enters.*, 8th Dist. Cuyahoga No. 95951, 2012-Ohio-472, ¶ 20 (failure to object to improper assignment); *Habegger v. Paul*, 6th Dist. Wood No. WD-03-038, 2004-Ohio-2215, ¶ 19 (accepting overdue rent); *Quinn v. Cardinal Foods Inc.*, 20 Ohio App.3d 194, 197, 485 N.E.2d 741 (3d Dist.1984) (failure to object to lessee's failure to comply with prerequisites to renew the lease);

17.

*Finkbeiner v. Lutz*, 44 Ohio App.2d 223, 226, 337 N.E.2d 655 (1st Dist.1975) (failure to object to lessee's failure to comply with prerequisites to renew the lease); *Bates & Springer v. Nay*, 8th Dist. Cuyahoga No. 26184, 187 N.E.2d 415, *2-3 (1963) (accepting overdue rent); and *Milbourn v. Aska*, 81 Ohio App. 79, 84, 77 N.E.2d 619 (3d Dist.1946) (accepting overdue rent).

{¶ 36} "[T]he existence of an equitable estoppel is a mixed question of law and fact. It is well established, however, that the question whether the facts constitute an estoppel is one for the court where the facts are undisputed. *Finkbeiner* at 229. In this case, the facts are undisputed. We find appellants' continued occupation of the leased property and the payment of rent, without objection by the Sofios until after the property was sold, bars the Sofios from asserting that there was breach of the written renewal option of the lease. The Sofios never sought to exercise their right of forfeiture under the default provisions of the lease until after they sold the property without giving appellants a right of first refusal to purchase the property.

{¶ 37} The Sofios also argue the lease provided that the lease terminated after 30 days of underpaying the rent and they had no duty to accept the tender of the unpaid rent two years after it was due. The trial court did not reach this issue because it determined that the lease renewal option had not been exercised. However, we note in this case the Sofios never asserted their right to terminate the leasehold due to a breach. Instead, they sold the property. Again, we find the Sofios are estopped from asserting a breach for underpayment of rent since they never sought to assert a right to forfeiture until they had

18.

sold the property without giving appellants the right of first refusal to purchase the property.

{¶ 38} Having waived their right of forfeiture, the Sofios cannot claim a breach by the lessee in order to avoid the Sofios' obligations under the lease. We find the trial court erred in finding as a matter of law that the rental period ended in 2011, that appellants became holdover tenants, and that the right of first refusal provision was no longer effective. Appellants' second and third assignments of error are found well-taken.

**Appellants' Right of First Refusal to Purchase the Property**

{¶ 39} In their fourth assignment of error, appellants argue that the trial court erred in holding that the Sofios did not breach the lease agreement by selling the property without giving appellants a right of first refusal to purchase the property.

{¶ 40} The trial court held that the right of first refusal was no longer enforceable because appellants became holdover tenants. This finding must now be reversed because we have concluded that the trial court erred by declaring appellants holdover tenants. Because the evidence is undisputed that the Sofios sold the property without giving appellants the right of first refusal to purchase the property, we find that the trial court erred in denying appellants summary judgment on this issue. We find appellants' fourth assignment of error is well-taken.

**Specific Performance**

{¶ 41} In their first assignment of error, appellants argue the trial court erred in denying appellants' summary judgment and the remedy of specific performance. Given

19.

our disposition of appellants' previous assignments of error, we find that the remedy for the Sofios' breach of the lease remains to be determined and this assignment of error is not yet ripe for review.

{¶ 42} Having found the trial court did commit error prejudicial to appellants and that substantial justice has not been done, the judgment of the Wood County Court of Common Pleas is reversed. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.           _____
                                                       JUDGE

Arlene Singer, J.                           

                                            _____
Stephen A. Yarbrough, J.                                     JUDGE
CONCUR.

                                            _____
                                                       JUDGE